Affirmed and Memorandum Opinion filed July 8, 2008








Affirmed
and Memorandum Opinion filed July 8, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00757-CR

____________

 

STEVAUGHN ANDRE BROWN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 351st
District Court

Harris County, Texas

Trial Court Cause No. 1091701

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Stevaughn Andre Brown, was indicted on the
felony offense of burglary of a habitation.  The jury returned a guilty
verdict, and the trial court sentenced appellant to seven years= confinement in
the Texas Department of Criminal Justice, Institutional Division.  In two
issues, appellant challenges the legal and factual sufficiency of the evidence
in support of the verdict.  We affirm.








Factual
and Procedural Background

In July/August 2006, Linda Stinson-Adams purchased the
house located next door to her own.  Both houses are located in a residential
community in Spring Branch, on a street that has only residential homes. 
Immediately after the seller moved out, Stinson-Adams began renovating the
house in order to resell it.  She completed some of the renovations on her own
and hired Victor Rodriguez, a contractor, to convert the garage into living
space, remodel the bathrooms, redo the floors, update the appliances, and paint
the house.

Stinson-Adams testified that the house was a Aprivate habitation@ that was vacant
only during this renovation period.  However, at the time of the burglary, the
renovations were completed and the house was in general working order.[1] 
The electricity and gas were both on, all the appliances were running, and the
air-conditioning was operational.  The house did not contain any furniture, but
she kept some personal belongings in the house such as paint, tools, fans, and
other equipment.  Rodriguez also kept his equipment at the house, including two
cordless drills, a skill saw, fans, and three briefcases.  According to
Stinson-Adams, someone could cook dinner at the house and spend the night there
comfortably.








On October 16, 2006, at around 4:30 or 5:00 p.m.,
Stinson-Adams noticed a white Ford F-150 pick-up truck parked in the driveway
of the house.  Believing that neither Rodriguez nor anyone else was supposed to
be working at that hour, Stinson-Adams walked next door to investigate.  Once
there, she observed appellant and two women.[2] 
Stinson-Adams testified that appellant was standing next to the window of the
garageCwhich had been
recently converted into living spaceCand was pulling Asomething long and
thin@out of the window,
an object which she believed may have been a fan or a ladder.  She also noticed
that the bed of the F-150 contained all of the items that had been inside the
house, including Rodriguez=s tools and equipment, and equipment she
personally supplied for the renovations.

 According to Stinson-Adams=s testimony, when
she confronted the group, the blonde female informed her that she had Aa note to come get
the stuff@ from the house.  However, Stinson-Adams testified
that she was never shown this note, and neither she nor Rodriguez had given
anyone permission to pick up items from the house.  Stinson-Adams then told the
group that they had no right to the property, and demanded that they remove the
items from the truck.  At that point, appellant complied, and began placing the
items in the driveway.

Stinson-Adams then returned to her house and called the
police.  When they realized she was on the telephone with the police, appellant
and the two women jumped into the truck and fled with several items remaining
in the back of the truck.[3] 
However, before the three left the scene, Stinson-Adams was able to recite the
license plate number of the F-150 to the police dispatcher.[4]








Within minutes, Officer Israel Hernandez of the Houston
Police Department arrived at the scene.  He testified that when he arrived, he
noticed several tools, ladders, and a fan  in the driveway.  After
Stinson-Adams related the details of the burglary to Officer Hernandez, the two
inspected the inside of the house.  They discovered that it had been emptied of
all of its contents.  They also observed that someone had attempted to pull out
all of the appliances, and that there were footprints left in every room of the
house.  They further inspected the front and rear doors of the house, and
discovered that someone had attempted to force the front door open.

 Ten days later, Stinson-Adams was shown a photo array from
which she identified appellant as the male suspect involved in the burglary. 
Shortly thereafter, a warrant was issued for appellant=s arrest.  Officer
Jeffrey Miller of the Houston Police Department later encountered appellant=s white F-150 and
pulled him over.  After confirming that appellant was the owner of the truck,
Officer Miller discovered that appellant had an outstanding warrant for
burglary of a habitation and arrested him.

 Appellant was subsequently indicted on the felony offense
of burglary of a habitation.  He pleaded not guilty and requested a jury
trial.  The jury convicted appellant, and the trial court sentenced him to
seven years= confinement in the Texas Department of Criminal
Justice, Institutional Division.  This appeal followed. 

Issues
on Appeal

In two issues, appellant challenges the legal and factual
sufficiency of the evidence in support of the verdict.  First, appellant
contends that the evidence is legally insufficient to prove that the premises
allegedly entered is a habitation.  He argues that the evidence, even when
viewed in the light most favorable to the verdict, failed to show that the
structure was a habitation because it (1) was not being used as a residence at
the time of the offense; (2) lacked furniture, bedding, and other belongings
common to a residential structure; and (3) was not adapted to accommodate
persons overnight at the time of the alleged offense.  Second, appellant argues
that the evidence was factually insufficient to prove the intent element of the
charged offense.  Appellant asserts that his own testimony, if credited,
shows that he had an innocent motive and therefore lacked the requisite intent
to commit theft.  We examine each of appellant=s issues in the
order he has presented them.








Analysis
of Appellant=s Issues

I.                  
The Evidence Is Legally Sufficient to Prove That the Premises
Entered Is a Habitation. 

First, appellant contends that the evidence is legally
insufficient to prove that the premises allegedly entered is a habitation.  He
asserts that, at the time of the offense, Stinson-Adams=s house (1) was
vacant and therefore not being used as a residence; (2) lacked furniture,
bedding, and other belongings common to a residential structure; and (3) not
adapted to accommodate persons overnight, although he concedes that it was Aprobably intended@ to accomplish
that use.  Appellant argues that none of the criteria set forth in Blankenship
v. State, 780 S.W.2d 198, 209 (Tex. Crim. App. 1989), is present in
this case, and therefore the structure was not a Ahabitation@ for the purposes
of section 30.02 of the Texas Penal Code.

Conversely, the State contends that the evidence is legally
sufficient to prove that Stinson-Adams=s house is a
habitation.  The State asserts that, although the house was vacant at the time
of the burglary, (1) it was vacant only during a brief period of renovations;
(2) it was used as a residence and intended to accommodate people overnight;
(3) Stinson-Adams considered it a house and kept her personal belongings there;
(4) it was located in a residential neighborhood with only Afamily homes,@ next-door to the
owner=s own home; (5) it
had a kitchen, living spaces, bedrooms, bathrooms, and a garage; (6) the
electricity, gas, and water utilities were on and working; (7) the
air-conditioner and all the appliances worked; and (8) someone could cook there
and spend the night there comfortably.  The State argues that the relevant
factors here are more compelling than those in Blankenship, and
therefore the evidence is legally sufficient to prove that Stinson-Adams=s house was a
habitation.  We agree with the State.








A.                
Standard of Review and Applicable Law

In reviewing the legal sufficiency of the evidence, we look
at the evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S.
307, 319 (1979); Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim. App.
2002).  This standard of review applies to cases involving both direct and
circumstantial evidence. King v. State, 895 S.W.2d 701, 703 (Tex. Crim.
App. 1995).  Although we consider all evidence presented at trial, we may not
re-weigh the evidence and substitute our judgment for that of the jury. King
v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  The jury is the
exclusive judge of the credibility of witnesses and of the weight to be given
their testimony, and it is the exclusive province of the jury to reconcile
conflicts in the evidence. Mosley v. State, 983 S.W.2d 249, 254 (Tex.
Crim. App. 1998).

A person commits the offense of burglary if, without the
effective consent of the owner, he enters a habitation or a building[5]
with the intent to commit a felony, theft, or an assault. See Tex. Penal Code _ 30.02(a)(1). 
Burglary of a habitation is a second degree felony, whereas burglary of a
building is a state jail felony. See id. _ 30.02(c).  








The Texas Penal Code defines Ahabitation@ as Aa structure or
vehicle that is adapted for the overnight accommodation of persons.@ See id. _ 30.01.  The Court
of Criminal Appeals has explained that A[w]hat makes a
structure >suitable= or >not suitable= for overnight
accommodation is a complex, subjective factual question fit for a jury=s determination.@ Blankenship,
780 S.W.2d at 209.  Factors that the jury could consider include (1) whether
someone was using the structure as a residence at the time of the offense; (2)
whether the structure contained bedding, furniture, utilities, or other
belongings common to a residential structure; and (3) whether the structure is
of such a character that it was probably intended to accommodate persons
overnight (e.g., a house, apartment, condominium, sleeping car, mobile home,
house trailer). See id. 

While all the above factors are relevant to guide a jury=s inquiry, none
are essential or necessarily dispositive. Id.  Furthermore, and more
importantly, the determination of whether a burglarized place is a Abuilding@ or a Ahabitation@ will be
overturned on appeal only if the appellant can show that no reasonable trier of
fact could have found the place to have been a habitation under the criteria
above. See id. at 209B10.

B.               
Application of Law to the Facts








Viewing the evidence in the light most favorable to the jury=s verdict, we
conclude that a rational trier of fact could have found beyond a reasonable
doubt that Stinson-Adams=s house is a habitation for the purposes
of section 30.02 of the Texas Penal Code.  The evidence adduced at trial
established that the house (1) was once lived in by its former owner; (2) had
been vacant only during a brief period of renovations; (2) has a kitchen,
living spaces, bedrooms, and bathrooms; (3) has functioning electricity and gas
utilities; (4) has functioning air-conditioning and appliances; (5) is located
next-door to Stinson-Adams=s home and within a larger residential
community; and (6) was used to store Stinson-Adams=s and Rodriguez=s personal
belongings.  In addition, Stinson-Adams testified that someone could spend the
night at the house comfortably.  From these facts, a rational trier of fact
could have found that Stinson-Adams=s house is a
habitation for the purposes of section 30.02 of the Texas Penal Code. See
id. at 210 (finding that vacant house was a habitation where house had once
been lived in by complainant, had a living room and two bedrooms, was wired for
electricity and had water readily available, had two window air-conditioning
units installed, was located 300 yards from the complainant=s own residence,
was used to store the complainant=s household items,
and complainant testified that the structure was adapted for the overnight
accommodation of persons); see also Hicks v. State, 204 S.W.3d 505, 506 (Tex.
App.CAmarillo 2006, no
pet.) (finding that vacant house was a habitation where owner testified that
the house was Ameant to be lived in,@ was wired for
electricity, had functioning water and gas utilities, and was in the process of
being re-leased); In re E.P., 963 S.W.2d 191, 193 (Tex. App.CAustin 1998, no
pet.) (concluding vacant apartment was a habitation where apartment had been
occupied about two weeks before the offense, was in the process of being
leased, had working water and electricity, had a kitchen, bathroom, and
bedroom, and was not situated alone, but rather was located within a larger, active
apartment complex). 

Furthermore, appellant=s contention that A[n]ot one of the
criteria set forth in Blankenship is present in his case@ is without
merit.  To the contrary, the
facts here are more compelling than those in Blankenship.  There, the
Court concluded that the complainant=s rent house was a habitation for the
purposes of section 30.02 of the Texas Penal Code, even though (1) the house
had been vacant for two years; (2) the power was off and there was no meter;
and (3) the water service was turned off in the back yard. See id. at
206. 
Here, the evidence established that Stinson-Adam=s house was vacant
for, at most, three months, and that the electricity, gas, and water utilities
were turned on and functional.

Thus, the evidence is legally sufficient to prove that
Stinson-Adams=s house is a habitation for the purposes of section
30.02 of the Texas Penal Code.  We therefore overrule appellant=s first issue.

II.                
The Evidence Is Factually Sufficient to Prove That Appellant
Entered Stinson-Adams=s
House With the Intent to Commit Theft.








Second, appellant contends that the evidence is factually
insufficient to prove the intent element of the charged offense.  Appellant
emphasizes his trial testimonyCnamely that, on the date of the alleged
burglary, his friend AMichelle@ asked him to help
move some items for a friend of hers, that he accompanied Michelle and another
woman named ADonna@ to Stinson-Adams=s house, that
Michelle told Stinson-Adams they had permission to remove the items from the
house, and that he therefore believed he had permission to take the items from
the house.  Appellant asserts that this testimony, Aif credited,@ established that
he lacked the necessary intent to commit theft.  He argues that there was no
sufficient justification in the record for the jury to discredit his testimony,
and that the evidence in this case is so weak that the verdict is manifestly
unjust.

In contrast, the State contends that the evidence is
factually sufficient to prove appellant entered Stinson-Adams=s house with the intent
to commit theft.  The State asserts that (1) the house is a Aprivate habitation@; (2) neither
Stinson-Adams nor Rodriguez gave appellant or anyone else permission to enter
or retrieve property from the house; (3) there was evidence that someone tried
to enter through the locked front door; (4) there were footprints in every room
of the house, and it was apparent that someone tried to pull out all the
appliances; (5) when confronted by Stinson-Adams, appellant was next to a
window pulling objects out; (6) appellant=s truck was loaded
with property from inside the house; and (7) appellant fled in his truck when
he discovered the police were on their way.  The State argues that, when viewed
in the appropriate light, this evidence is not so weak as to undermine
confidence in the jury=s determination.  The State further argues
that the contrary evidence does not so greatly outweigh the proof supporting
the jury=s verdict as to
make it manifestly unjust, because appellant=s testimony
regarding his belief that he had permission to take the property was Aa self-serving
rendition of the events,@ and the jury was entitled to determine
that this testimony lacked credibility and thus disregard it.  Again, we agree
with the State.

A.                
Standard of Review and Applicable Law           








In reviewing the factual sufficiency of the evidence, we
view all of the evidence in a neutral light. See Cain v. State, 958
S.W.2d 404, 408 (Tex. Crim. App. 1997); Clewis, 922 S.W.2d at 134.  We
may set the verdict aside if (1) the evidence is so weak that the verdict is
clearly wrong and manifestly unjust; or (2) the verdict is against the great
weight and preponderance of the evidence. Watson v. State, 204 S.W.3d
404, 414B15 (Tex. Crim.
App. 2006) (citing Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000)).  While we may disagree with the jury=s conclusions, we
must exercise appropriate deference to avoid substituting our judgment for that
of the jury, particularly in matters of credibility. Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005); see also Watson, 204 S.W.3d
at 414 (stating that an appellate court should not reverse a verdict it
disagrees with unless it represents a manifest injustice, though supported by
legally sufficient evidence).  Thus, while we are permitted to substitute our
judgment for that of the jury when considering credibility and weight
determinations, we may do so only to a very limited degree. Marshall v.
State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

As noted above, a person commits the offense of burglary
if, without the effective consent of the owner, he enters a habitation with the
intent to commit a felony, theft, or an assault. See Tex. Penal Code _ 30.02(a)(1).  In
a prosecution for burglary, intent to commit theft may be inferred from the
circumstances. Mauldin v. State, 628 S.W.2d 793, 795 (Tex. Crim. App.
[Panel Op.] 1982).  Intent may also be inferred from the acts, words, and
conduct of the accused. See Smith v. State, 965 S.W.2d 509, 518 (Tex.
Crim. App. 1998); McGee v. State, 923 S.W.2d 605, 608 (Tex. App.CHouston [1st
Dist.] 1995, no pet.).  Intent is a question of fact within the sole purview of
the jury. See Brown v. State, 122 S.W.3d 794, 800 (Tex. Crim. App.
2003); Ramirez v. State, 229 S.W.3d 725, 729 (Tex. App.CSan Antonio 2007,
no pet.).

B.                
Application of Law to the Facts








Viewing the evidence in a neutral light, we find that the
evidence is factually sufficient to prove that appellant entered Stinson-Adams=s house with the
intent to commit theft.  Although appellant testified that he lacked the intent
to commit theft because he Anever thought he was acting without permission,@ there was
testimonial evidence that (1) appellant did not have permission to enter or
remove items from Stinson-Adams=s house; (2) someone tried to enter
through the locked front door; (3) there were footsteps in every room of the
house, and someone had tried to pull out all the appliances; (4) appellant was
standing next to a window and pulling an object out of the window; (5)
appellant=s truck was loaded with property from inside the
house; and (6) appellant fled when Stinson-Adams called the police.  We are
mindful that we must exercise appropriate deference to the jury=s credibility
determinations, so as to avoid substituting our judgment for that of the jury.  See
Drichas, 175 S.W.3d at 799; Marshall, 210 S.W.3d at 625.  Thus, the
jury was entitled to disbelieve appellant=s testimony and
believe that appellant entered Stinson-Adams=s house with the
intent to commit theft. See McNeil v. State, 631 S.W.2d 240, 241 (Tex.
App.CFort Worth 1982,
no pet.) (finding jury was justified in finding that defendant intended to
commit theft when he was discovered with his hands through the window of an
apartment manager=s office, the apartment manager and handyman
testified that defendant did not have permission to enter office, and defendant
fled from the scene).

Therefore, we conclude the evidence that appellant entered
Stinson-Adams=s house with the intent to commit theft is not so weak
that the verdict is clearly wrong and manifestly unjust.  We further conclude
that the jury=s verdict was not against the great weight and
preponderance of the contrary evidence at trial.  Thus, we hold that the
evidence is factually sufficient to establish the intent element of the charged
offense.  Accordingly, we overrule appellant=s second issue.

                                                      Conclusion

Having addressed and overruled each of appellant=s issues, we
affirm the trial court=s judgment.

 

 

/s/      Frank C. Price

Senior Justice

 

 

Judgment rendered
and Memorandum Opinion filed July 8, 2008.

Panel consists of
Chief Justice Hedges, Justice Boyce, and Senior Justice Price.*

Do Not Publish C Tex. R. App. P. 47.2(b).

 

* Senior Justice
Frank C. Price sitting by assignment.









[1]  On direct examination, Rodriguez testified that, at
the time of the burglary, the renovations were finished and that he was in the
process of doing touch-ups on the remodeling work.





[2]  On cross-examination, Stinson-Adams testified that
one of the women was a blonde, Caucasian female, and the other appeared to be
African-American.  She explained that, during the incident, appellant and the
blonde female were standing outside the F-150, while the other female remained
inside the truck.  On direct examination, appellant testified that he was
accompanied to Stinson-Adams=s house by  AMichelle Martinez,@
who is Hispanic, ADonna,@ who is
Caucasian, and a  man named ASteve.@  However, Stinson-Adams did not mention a second male
suspect in her testimony.





[3]  On cross-examination, Stinson-Adams testified that
appellant and the blonde female had almost emptied the bed of the F-150 before
they fled the scene.  She further explained that she could not specifically say
what items remained in the back of the truck when the three fled, but suspected
that they left with some of the fans that had been stored inside the house. 
However, on direct examination appellant denied that any items remained in the
back of the F-150 when they left the scene.





[4]  Investigating officers subsequently ran the license plate number
reported by Stinson-Adams and matched it to a white Ford F-150 owned by
appellant.  At that point, appellant=s F-150 was listed as a Avehicle of interest.@





[5]  The Texas Penal Code defines Abuilding@ as Aany enclosed structure intended for
use or occupation as a habitation or for some purpose of trade, manufacture,
ornament, or use.@ See Tex. Penal Code _ 30.01(2).  The offense of
burglary requires that the building entered Anot
[be] then open to the public.@ See id.
_ 30.02(a)(1).