Affirmed and Memorandum Opinion filed August 21, 2008








Affirmed and Memorandum Opinion filed August 21, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00060-CR

_______________

 

RICARDO RAMIREZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 239th District Court

 Brazoria County, Texas

Trial Court Cause No. 51,268 

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

A jury
convicted appellant Ricardo Ramirez of murder, assessed a fine of $10,000, and
sentenced him to thirty-seven years confinement in the Texas Department of
Criminal Justice, Institutional Division.  In two issues, appellant challenges
the legal and factual sufficiency of the evidence to support his conviction. 
We affirm.








I.  Factual and Procedural
Background

In the
early morning hours of February 11, 2006, appellant fatally shot the decedent,
Brian Pearson, at a party held by a mutual acquaintance.  The events that
transpired before and after the shooting were described by witnesses at
appellant=s trial as follows.

The
party began the preceding evening at a trailer owned by the parents of John
Rambo. Allie Dickenson and Pearson gave appellant a ride to the party.[1]  
Many people attended, and alcohol was served.  At the trailer, appellant
removed a black Glock handgun from his waistband and waved it around.  Several
times, he removed a bullet from the gun, tossed it in the air, and caught it. 
At one point in the evening, appellant disassembled the gun and reassembled
it.  He also briefly left the party with another attendee, Ashley Bock, to shoot
his gun on a nearby back road.  According to Bock, appellant told her he
released his anger by shooting his gun.

After
Bock and appellant returned, appellant argued with  Raymond ABubba@ Wilder.  The argument escalated, and
according to Wilder, appellant pulled out the gun, cocked it, and then returned
it to his waistband.  Wilder explained that by cocking the gun, appellant
chambered a bullet.  Wilder further testified that appellant pushed him over
some chairs, then reached for the gun again.  Several witnesses testified that,
at this point, Pearson Abear-hugged@ the appellant in an effort to defuse the situation.  Pearson
and appellant then went into a back room.  Although several people gathered
around the room, appellant and Pearson told everyone not to worry and to leave
them alone. 








Joshua
Gay, another party-goer, found appellant=s cell phone and went to the back
room to return it.  According to Gay, appellant pulled him into the room and
shut the door.  Gay testified that appellant and Pearson were reminiscing and
play-fighting in the room.  Gay stated that appellant and Pearson engaged in a
slapping match, taunting each other by saying things such as, A[M]y Grandma hits harder than that.@  Gay admitted that he began teasing
appellant after Pearson threw two quick punches to appellant=s face.  Appellant then pulled out
his gun and pointed it at Pearson=s head, stating, AThat=s all right.  Pearson knows how I
play.@  According to Gay, Pearson smiled,
leaned into the gun, and told appellant, AYou are not going to squeeze that
trigger.@  Gay testified that appellant pulled
the trigger, he heard a gunshot, and Pearson fell to the ground.[2] 
Although Gay believed that appellant and Pearson were Aplaying around@ when appellant initially put the gun
to Pearson=s head, Gay acknowledged he did not think appellant was Aplaying@ when he pulled the trigger.  Gay
stated that after the shooting, appellant tried to hand the gun to Gay, but he
would not take it.  Instead, he ran from the room and out of the trailer. 

John
Rambo testified that he was outside when he heard the gunshot.  He stated that
he ran inside the trailer and saw appellant coming out of the back room.  Rambo
testified that he could tell from the look on appellant=s face that Asomething bad had happened.@  Rambo stated that when he entered
the back room, he found Pearson=s body.  He yelled Pearson=s name and touched his face, but
received no response.  Rambo then shouted at everyone to leave, called 911, and
went outside.  When the police arrived, Rambo told them appellant had shot
Pearson.








In the
meantime, appellant had fled the scene.  According to Bock and another party
attendee named Derek Baker, appellant jumped into Bock=s car as she and Baker were leaving,
shouting at them to Ago!@  Both Bock and Baker testified that appellant appeared
distraught and shocked, and he told them he did not know a bullet was in the
chamber when he pulled the trigger.  Bock and Baker further stated that
appellant seemed suicidal and inconsolable.  Bock drove appellant and Baker to
another friend=s residence where they attempted to console appellant and discuss what
had happened.  After about an hour, Bock called 911 from another room.  Police
officers arrived shortly after her call, and appellant was arrested without
incident. 

After
hearing the evidence and argument of counsel, the trial court instructed the
jury  on the defense of mistake-of-fact as follows:

Upon the
law of mistake of fact, you are instructed that it is a defense to prosecution
that the defendant, through mistake, formed a reasonable belief about a matter
of fact, if his mistaken belief negated the kind of culpability required for
commission of the offense.

AReasonable
belief@ means a belief that would be held by an ordinary and
prudent person in the same circumstances as the actor.

Now bearing
in mind the foregoing instructions, if you find from the evidence beyond a
reasonable doubt that the defendant . . . intentionally or knowingly pulled the
trigger of a handgun, but you further find from the evidence or you have a
reasonable doubt thereof, that at the time of such conduct by the defendant . .
. that the defendant, through mistake formed a reasonable belief about a matter
of fact, to-wit: that the handgun did not have a bullet in its chamber at the
time of its discharge, or if you have a reasonable doubt thereof, you will
acquit the defendant and find him not guilty.

The jury found appellant
guilty of murder as charged in the indictment, assessed punishment at
thirty-seven years confinement in the Texas Department of Criminal Justice,
Institutional Division, and imposed a $10,000 fine.  The trial court sentenced
appellant accordingly, and this appeal timely ensued.

II.  Issues Presented

In two
issues, appellant challenges the legal and factually sufficiency of the
evidence supporting the jury=s conclusion that he intentionally or knowingly caused
Pearson=s death.








III.  Standard of Review

When
reviewing the legal sufficiency of the evidence, we do not ask whether we
believe the evidence at trial established guilt beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 318B19, 99 S. Ct. 2781, 2789 (1979). 
Rather, we examine all the evidence in the light most favorable to the verdict
to determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  Id. at 319, 99 S.
Ct. at 2789; Mason v. State, 905 S.W.2d 570, 574 (Tex. Crim. App. 1995)
(en banc).We consider both direct and circumstantial evidence and all
reasonable inferences that may be drawn therefrom in making our determination. 
See Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

When
reviewing the factual sufficiency of the evidence, on the other hand, we view
all the evidence in a neutral light and set aside the verdict Aonly if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.@  Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997) (en banc) (quoting Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996) (en banc)).  Before we may reverse for
factual insufficiency, we must first be able to say, with some objective basis
in the record, that the great weight and preponderance of the evidence
contradicts the jury=s verdict.  Watson v. State, 204 S.W.3d 404, 417 (Tex.
Crim. App. 2006).  When reviewing the evidence, we must avoid intruding on the
factfinder=s role as the sole judge of the weight and credibility of the witness
testimony.  Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000) (en
banc). We do not re‑evaluate the credibility of witnesses or the weight
of evidence, and we will not substitute our judgment for that of the
factfinder.  Johnson v. State, 967 S.W.2d 410, 412 (Tex. Crim. App.
1998).








IV.  Analysis 

A person
commits murder if (a) he intentionally or knowingly causes the death of an individual,
or (b) with intent to cause serious bodily injury, he commits an act clearly
dangerous to human life.  Tex. Penal
Code Ann. ' 19.02(b)(1), (2) (Vernon 2003).  Appellant confines his
sufficiency challenge to evidence of his mental state, arguing that the State
failed to establish that he intentionally or knowingly caused Pearson=s death.  Our discussion therefore
focuses on the evidence relevant to the jury=s determination of whether appellant
acted intentionally or knowingly.  An act is intentional when it is the actor=s Aconscious objective or desire to
engage in the conduct or cause the result.@  Id. ' 6.03(a).  AA person acts knowingly with respect
to a result of his conduct when he is aware that his conduct is reasonably
certain to cause the result.@  Id. ' 6.03(b).  

Our
review is not confined to direct evidence, and intent is proven most often
through the circumstantial evidence surrounding the offense.  Hernandez v.
State, 819 S.W.2d 806, 819 (Tex. Crim. App. 1991) (en banc). 
Circumstantial evidence, however, is as probative of guilt as direct evidence. 
Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).  Jurors may
infer intent from facts that tend to prove its existence, such as the defendant=s acts, words, and conduct.  Id. at
50.  Intent to kill also may be inferred from the use of deadly weapon,[3]
unless it would not be reasonable to infer that death or serious bodily injury
could result from the use of the weapon.  Jones v. State, 944 S.W.2d
642, 647 (Tex. Crim. App. 1996); Godsey v. State, 719 S.W.2d 578, 580B81 (Tex. Crim. App. 1986) (en banc); Dominguez
v. State, 125 S.W.3d 755, 762 (Tex. App.CHouston [1st Dist.] 2003, pet. ref=d). 








Here,
appellant pointed a loaded firearm to Pearson=s head and pulled the trigger. 
Appellant relies on In re J.D.P. to support his contention that his
behavior was reckless rather than intentional.  85 S.W.3d 420, 425 (Tex. App.CFort Worth 2002, no pet.).  In that
case, a juvenile was adjudicated delinquent for reckless injury to a child.  Id. 
The juvenile appellant was seen unloading the gun prior to pointing it at the
victim and pulling the trigger.  Id. at 424.  The Second Court of
Appeals stated, AThe fact that [a]ppellant did not know there was a bullet in
the chamber is the very reason he was charged with reckless injury to a child,
rather than intentional injury to a child.@  Id. at 425.  Here, Wilder
testified that appellant cocked the gun and chambered a bullet shortly before
pointing the gun at Pearson, and there is no evidence that appellant
subsequently attempted to unload the gun before  pointing it at Pearson and
pulling the trigger.  From this evidence, a reasonable jury could have inferred
that appellant was aware that his gun was loaded when he went into the back
room with Pearson.  Although several witnesses testified that appellant
appeared distraught and shocked and repeatedly claimed that he did not know a
bullet was in the chamber after the shooting, A[a] defendant=s statement that he did not intend to
kill cannot be plucked out of the record and examined in a vacuum.@  Navarro v. State, 863 S.W.2d
191, 205 (Tex. App.CAustin 1993) (citing Godsey, 719 S.W.2d at 584), pet.
ref=d,
891 S.W.2d 648 (Tex. Crim. App. 1994) (en banc); see also Cardenas v. State,
30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (en banc) (defendant=s statement that he did not intend to
kill the victim did not negate other evidence of intent to kill).  








The jury
also heard evidence that appellant was involved in an altercation shortly
before the shooting and was visibly angry when Pearson intervened.  Joshua Gay,
the only eyewitness to the murder, testified that the shooting occurred immediately
after Pearson punched appellant in the face.   Moreover, Ashley Bock testified
that appellant told her he released his anger by shooting his gun, and Gay
acknowledged that he did not think appellant was Aplaying around@ when he pulled the trigger.  From
this evidence, a reasonable jury could have inferred that appellant was angry
with Pearson and pulled the trigger of the loaded gun with the intention of
firing a shot at him.[4]  Finally,
rather than staying at the location and attempting to determine if the decedent
was alive, offer help, or turn himself into authorities, appellant immediately
left the trailer, jumped into a car, and yelled at the driver to Ago!@[5]  

Viewing
the evidence in the light most favorable to the verdict, we conclude that a
rational trier of fact could have inferred an intent to kill based on appellant=s actions.  See Ramirez v. State,
229 S.W.3d 725, 729B30 (Tex. App.CSan Antonio 2007, pet. ref=d) (concluding jury could infer
intent to kill based on the appellant=s failure to call police or emergency
personnel after he shot the decedent, delay in taking the decedent to the
hospital, the conflicting stories the appellant provided to various witnesses,
and the fact that the appellant left after hospital personnel asked him to
stay).  We therefore overrule appellant=s first issue.  Further, viewing all
the evidence in a neutral light, we cannot say that the jury=s verdict is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.[6] 
See id. at 730; Dominguez, 125 S.W.3d at 762 (determining jury
was entitled to infer intent to kill from appellant=s use of a deadly weapon in a deadly
manner).   We overrule appellant=s second issue.








V.  Conclusion

Having
determined that the evidence is both legally and factually sufficient to
support the jury=s verdict, we affirm the judgment of the trial court.

 

 

 

/s/        Eva M. Guzman

Justice

 

 

Judgment rendered and Memorandum
Opinion filed August 21, 2008.

Panel consists of Justices Fowler,
Seymore and Guzman.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  Several
witnesses testified that appellant and Pearson were friends or friendly, but
Dickenson and Jonathan Ashley, who was not present at the party, testified that
Pearson and appellant were not friends.  





[2]  The medical
examiner testified that the decedent died from a single gun-shot wound to the
head and that the muzzle of the gun was against the decedent=s head when the gun was fired.





[3]  A firearm is a
deadly weapon as a matter of law.  See Tex.
Penal Code Ann. ' 1.07(a)(17)(A) (Vernon Supp. 2007).





[4]  AMotive is a
significant circumstance indicating guilt.@  Guevara,
152 S.W.3d at 50.





[5]  Leaving the
scene of a crime indicates a consciousness of guilt.  See, e.g., Yost
v. State, 222 S.W.3d 865, 875 (Tex. App.CHouston
[14th Dist.] 2007, pet. ref=d) (holding
that evidence that the defendant left the scene of the offense reflected his
consciousness of guilt).





[6]  Moreover, as
noted above, the jury was charged on the defense of mistake-of-fact.  Based on
its verdict, the jury implicitly rejected appellant=s claim that he reasonably believed there was no
bullet in the chamber of the gun when it discharged.