Anthony RAMIREZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–05–00322–CR.

Court of Appeals of Texas,
San Antonio.

March 7, 2007.

John J. 'Bud' Ritenour, Jr., San Antonio, for appellant.

Marc S. Ledet, Asst. Dist. Atty., Floresville, for appellee.

## OPINION

Opinion by REBECCA SIMMONS, Justice.

On October 4, 2006, we issued an opinion and judgment affirming the decision of the trial court. Appellant, Anthony Ramirez, has filed a motion for rehearing. We deny appellant's motion; however, we withdraw our opinion and judgment of October 4, 2006, and substitute this opinion and judgment in their stead.

In a two paragraph indictment, Appellant Anthony Ramirez was charged with the murder of Paul Guajardo under Sections 19.02(b)(1) and 19.02(b)(2) of the Texas Penal Code. TEX. PEN.CODE ANN. §§ 19.02(b)(1)-(2) (Vernon 2003). The jury returned a verdict finding Ramirez "guilty of murder, as charged in the indictment" and sentenced Ramirez to twenty-eight years confinement in the Institutional Division of the Texas Department of Criminal Justice and assessed a fine in the amount of $10,000.00. Ramirez now contends that the evidence was legally and factually insufficient to establish that he acted with the requisite intent or knowledge. Additionally, Ramirez contends that his trial counsel was ineffective by making statements to the jury that lowered the State's burden of proof.

### LEGAL AND FACTUAL SUFFICIENCY

In points of error one and two, Appellant Ramirez complains that the evidence was legally and factually insufficient to prove the requisite culpable mental state for murder.

### A. Standard of Review

As in most cases, when there is no direct evidence of a defendant's intent, the State must establish the necessary intent by circumstantial evidence. *See Dillon v. State,* 574 S.W.2d 92, 94 (Tex.Crim. App.1978). In a legal-sufficiency review, we view the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *King v. State,* 29 S.W.3d 556, 562 (Tex.Crim.App.2000). The standard is the same for both direct and circumstantial evidence. *Sutherlin v. State,* 682 S.W.2d 546, 549 (Tex.Crim.App. 1984). In determining the legal sufficiency of the evidence, an appellant's intent must be presumed, in favor of the prosecution, even without affirmative proof on the record that the trier of fact resolved any such conflict. *Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App.1991).

In a factual sufficiency review, we consider all the evidence in a neutral

light and only reverse if: (1) the evidence is so weak as to make the verdict clearly wrong or manifestly unjust, or (2) the verdict is against the great weight and preponderance of the evidence. *Watson v. State,* 204 S.W.3d 404, 414–15 (Tex.Crim. App.2006) (citing *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000)); *Cain v. State,* 958 S.W.2d 404, 408 (Tex.Crim. App.1997). We must, however, avoid substituting our judgment for that of the factfinder, the sole judge of the weight and credibility of witness testimony. *Johnson,* 23 S.W.3d at 7. The standard of review for cases involving circumstantial evidence is the same as when a case is comprised of direct evidence. *Kutzner v. State,* 994 S.W.2d 180, 184 (Tex.Crim.App.1999).

### B. Required Mental State

The Penal Code defines murder as intentionally or knowingly causing the death of an individual. TEX. PEN.CODE ANN. § 19.02(b)(1) (Vernon 2003). A person commits the offense of murder under Section 19.02(b)(2) if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PEN.CODE ANN. § 19.02(b)(2) (Vernon 2003). "Serious bodily injury" is bodily injury that creates a substantial risk of death or causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any "bodily member or organ." TEX. PEN.CODE ANN. § 1.07(a)(46) (Vernon Supp. 2004–05); *Ferrel v. State,* 55 S.W.3d 586, 589 (Tex.Crim.App.2001). Appellant contends the evidence was insufficient to support the requisite mental state. The record reflects otherwise.

On November 14, 2003, Appellant Anthony Ramirez and his friend Paul Guajardo spent the day eating, drinking, listening to music and doing "lines of crank." Somewhere between 3:00 and 4:00 p.m., Ramirez and Guajardo arrived at Ramirez's grandmother's residence. According to Ramirez, he possessed a single-action .357 revolver and as Guajardo "twirled" the loaded firearm and spun it around, the firearm discharged and hit Guajardo. Without contacting any medical or emergency service, Ramirez dragged Guajardo through the house and into his vehicle. At approximately 4:50 p.m., Ramirez delivered Guajardo to the Wilson County Hospital's emergency room where Guajardo was pronounced dead approximately one hour later. Ramirez informed hospital personnel that Guajardo had been shot on a dirt road and then, over the objection of hospital personnel, Ramirez left the hospital.

According to the record, Ramirez went to Guajardo's residence where he met Guajardo's brother. Ramirez informed Guajardo's brother that Guajardo had been shot while they were cruising around town. Thereafter, Ramirez went to a low water crossing area, known as "The Bud" where he started calling his friends in an attempt to help him dispose of his vehicle and obtain a ride away from the clearing in which he left his vehicle. Additionally, while at the Bud, Ramirez unloaded the bullets from the firearm and threw them into the river.

At approximately 11:00 p.m., Ramirez and his attorney went to the Wilson County Police Department where Ramirez gave officers a third version of the incident, which he described as an unfortunate accident. Ramirez claimed that Guajardo grabbed the firearm, with his non-dominant hand, and was "twirling" it around when the firearm discharged. This version, however, contradicted the forensic evidence. Specifically, the medical examiner's testimony was that the gunshot residue, the tattooing on the body and the angle of the wound all indicated a homicide and not a self-inflicted wound.

In addition to the forensic evidence, the State highlighted several discrepancies in Ramirez's story, including: the minimal blood on his shirt was dried and crusted by the time he arrived at the hospital; while Guajardo was presumably bleeding to death in the vehicle, Ramirez took the necessary time to go back into the house to retrieve the firearm and locate the shell casing in question; Ramirez's failure to call police or the hospital, although he had a cell phone in his possession; the inconsistent stories Ramirez told about the incident—to the hospital, to the family and to the officers; the fact that Ramirez left the hospital when emergency personnel asked him to stay; and finally, an unexplained bag of methamphetamine apparently placed on Guajardo's body. Oddly, Ramirez kept the shell casing from the bullet that killed Guajardo, even through changes of clothes and a shower. As he offered the shell casing to the officer, Ramirez stated "I got something you probably want to see but I want you to promise I can get it back ... I want it back."

The jury was charged under Sections 19.02(b)(1) and 19.02(b)(2) of the Texas Penal Code, including both intentionally causing the death or intending to cause serious bodily injury and committing an act clearly dangerous to human life. Taking into consideration Ramirez's actions and conduct, a rational jury could have reasonably inferred that Ramirez either intended to shoot and kill Guajardo or that Ramirez intended to cause serious bodily injury to Guajardo and committed an act clearly dangerous to human life. *West v. State*, 846 S.W.2d 912, 915 (Tex.App.-Beaumont 1993, pet. ref'd).

### ANALYSIS

■ Intent is a question of fact and therefore within the sole purview of the jury for which the jury may rely on its collective common sense and apply common knowledge and experience. *Brown v. State*, 122 S.W.3d 794, 800 (Tex.Crim.App. 2003); *Rodriguez v. State*, 90 S.W.3d 340, 355 (Tex.App.-El Paso 2001, pet. ref'd). Additionally, intent may be inferred from the circumstantial evidence surrounding the incident including the acts, words and conduct of the accused. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex.Crim.App.1995). "The specific intent to kill may be inferred from the use of a deadly weapon." *Godsey v. State*, 719 S.W.2d 578, 580–81 (Tex. Crim.App.1986).

■ Importantly, however, to commit murder under Section 19.02(b)(2) the intent to kill is not required. *See Medina v. State*, 7 S.W.3d 633, 638 n. 4 (Tex.Crim. App.1999). It is sufficient to show only the intent to cause serious bodily injury and commit a clearly dangerous act. *Rodriguez v. State*, 146 S.W.3d 674, 676 n. 3 (Tex.Crim.App.2004); *Forest v. State*, 989 S.W.2d 365, 368 (Tex.Crim.App.1999) (holding that firing a gun in the direction of an individual is an act clearly dangerous to human life); *Goodin v. State*, 726 S.W.2d 956, 959 (Tex.App.Fort Worth 1987), *aff'd*, 750 S.W.2d 789 (Tex.Crim. App.1988) (finding intent to cause serious bodily injury from defendant's admission that he pointed a gun at victim and pulled trigger).

■ The jury was free to accept or reject the testimony of any witness and evidently chose to believe the State's witnesses, and we remain mindful of such findings. *Watson*, 204 S.W.3d at 414, citing *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997); *Flanagan v. State*, 675 S.W.2d 734, 746 (Tex.Crim.App.1984); *Rodriguez v. State*, 644 S.W.2d 200, 203 (Tex.App.-San Antonio 1982, no pet.) (denial of intent presented fact issue within the purview of the jury to resolve). Moreover, intent may also be inferred from circum-

stantial evidence such as the acts, words, and conduct of the accused. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex.Crim.App. 1995). When a defendant's version of the facts conflict with other witnesses' testimony or other evidence, it is the jury's prerogative to draw reasonable inferences from the evidence, and to judge the credibility of the witnesses and the weight to be given their testimony. *See Jones v. State*, 944 S.W.2d 642, 647–49 (Tex.Crim.App. 1996). As such, Ramirez's argument that the shooting was not intentional is viewed in light of not only his testimony, but also his actions following the incident, his multiple statements and the forensic evidence. *See Washington v. State*, 2002 WL 31863770, *2 (Tex.App.-San Antonio 2002, pet. ref'd, untimely filed). Because there was some evidence to support the jury's finding that Ramirez had the required mental state, we conclude that the evidence was legally sufficient to support the conviction under Sections 19.02(b)(1) or (2). *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781; *Watson*, 204 S.W.3d at 414–15; *see also Sanders v. State*, 119 S.W.3d 818, 820–21 (Tex.Crim.App.2003). Moreover, when all of the evidence is viewed neutrally, the State's proof of Ramirez's culpable mental state is not too weak to support guilt beyond a reasonable doubt, nor is the weight of the contrary evidence strong enough that the State could not have met its burden of proof. *Zuliani v. State*, 97 S.W.3d 589, 593–94 (Tex.Crim.App.2003). Ramirez's first and second points of error are overruled.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ In his third point of error, Ramirez argues that trial counsel rendered ineffective assistance of counsel by lessening the State's burden of proof. During opening and closing arguments, counsel made statements regarding his approach to the case, including "what we're going to

have to do with [defendant's] statement, we believe, is go through each one of the things and prove how it could have happened or how it did happen that way" and "I said if anyone thinks that we don't have to meet our burden, there's something wrong. We had to come in and prove up our case ... to prove that what he said happened." Ramirez believes that counsel's statements not only alleviated the State's burden of proof but assumed the burden of proving Ramirez's innocence.

### A. Standard of Review

■ The standard of review for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a claim of ineffective assistance of counsel, an appellant must first demonstrate that counsel's performance was deficient, that being the lawyer made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment, and second, make a showing of prejudice, or that counsel's errors were so serious that there exists a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694, 104 S.Ct. 2052; *see also Hernandez v. State*, 726 S.W.2d 53, 55 (Tex.Crim.App.1986). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *Butler v. State*, 716 S.W.2d 48, 54 (Tex. Crim.App.1986). The failure to satisfy either prong of *Strickland* negates an appellate court's need to consider the other prong. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052.

■ It is the defendant's burden to prove ineffective assistance of counsel and the same must be firmly supported by the record. *McFarland v. State*, 928 S.W.2d

482, 500 (Tex.Crim.App.1996), *overruled on other grounds, Mosley v. State,* 983 S.W.2d 249 (Tex.Crim.App.1998). When assessing appellant's claims, we presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *Jackson v. State,* 877 S.W.2d 768, 771–72 (Tex.Crim.App. 1994). It is the Appellant that bears the burden to rebut this presumption. *Id.*

█ When the record is silent as to the reasoning and strategy upon which his trial counsel may have relied, as it is in this case, we may not speculate about the reasoning that counsel may have employed and whether that reasoning was faulty. *Id.* Instead, an appellate court presumes trial counsel had a plausible reason for his actions and thus, we will not indulge in speculation to find trial counsel's actions ineffective. *Thompson v. State,* 9 S.W.3d 808, 814 (Tex.Crim.App.1999).

**B. Analysis**

A review of the record reveals that counsel was a strong advocate for his client and adhered to a strategy of accident and lack of intent. Counsel stressed that the defense was up-front and forthcoming and that the evidence substantiated Ramirez's version of the events, as opposed to the State's continuous hypotheticals. Counsel could have made his comments of having to prove Rodriguez's statements accurate in view of the numerous other explanations that he offered which were presented to the jury. Such an approach can be part of a sound trial strategy. *See, e.g., Bone v. State,* 77 S.W.3d 828, 830 (Tex.Crim.App. 2002); *Hathorn v. State,* 848 S.W.2d 101, 118–20 (Tex.Crim.App.1992).

Moreover, Ramirez points to the two instances wherein counsel uses the word burden in an attempt to talk about showing the jury what really happened. Yet, he presents no evidence to rebut the presumption that trial counsel's actions were the result of reasonable strategic decisions. Further, the jury was specifically instructed by the trial court that "the law does not require a defendant to prove his innocence or produce any evidence" and "the prosecution has the burden of proving the defendant guilty." From this record, it is reasonable to conclude that there were legitimate and professionally sound reasons for trial counsel's conduct. Ramirez has failed to present any evidence to rebut the presumption that his counsel's actions conformed with sound trial strategy. We therefore overrule Ramirez's third point of error.

CONCLUSION

Having overruled all of Ramirez's points of error, we affirm the judgment of the trial court.