# MEMORANDUM OPINION

No. 04-07-00659-CV

In the **MATTER OF S.L.H.**

From the 289th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-JUV-02101
Honorable Carmen Kelsey, Judge Presiding

Opinion by:  Steven C. Hilbig, Justice

Sitting:  Alma L. López, Chief Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  June 11, 2008

AFFIRMED

This is an appeal from the trial court's adjudication and disposition orders following a contested hearing on the State's petition alleging S.L.H engaged in delinquent conduct by committing a burglary.  S.L.H. argues the trial court erred in entering its order of adjudication because the evidence was factually insufficient to support it.  We affirm the trial court's judgment.

## BACKGROUND

Leslie Garcia was leaving the home she shared with her boyfriend, Angel Torres, and moving to a new residence.  When she returned to her old residence to retrieve some forgotten items, she saw

a truck backed up in the driveway and several people she did not know, including S.L.H., leaving the residence. She called the police and after a brief investigation, all of the individuals, save a small boy, were arrested. The State filed an original petition alleging S.L.H., who was sixteen, engaged in delinquent conduct by committing the offense of burglary of a habitation. *See* TEX. PENAL CODE ANN. §§ 30.02(a)(1), (3) (Vernon Supp. 2007). The petition named Garcia as the complainant. The State ultimately filed an amended petition that was identical to the first except it named Angel Torres as the complainant.

S.L.H.'s case was called for trial and she waived a jury. Both S.L.H. and the State presented evidence and arguments after which the trial court found the State's allegation of burglary by attempting to commit and committing theft not true, but the State's allegation of burglary with intent to commit theft true. Following a disposition hearing, the trial court placed S.L.H. on probation in the physical custody of her aunt until her eighteenth birthday. S.L.H. filed this appeal.

## STANDARD OF REVIEW

The State must prove its allegations of delinquency in juvenile cases beyond a reasonable doubt. TEX. FAM. CODE ANN. § 54.03(f) (Vernon Supp. 2007). In reviewing a challenge to the sufficiency of the evidence in juvenile adjudications we use the standards of review applicable in criminal cases. *In re M.C.*, 237 S.W.3d 923, 926 (Tex. App.–Dallas 2007, no pet.); *In re A.C.*, 949 S.W.2d 388, 390 n.1 (Tex. App.–San Antonio 1997, no writ). S.L.H. has challenged only the factual sufficiency of the evidence. We therefore view all of the evidence in a neutral light and ask whether the trier of fact was rationally justified in finding guilt beyond a reasonable doubt. *Watson v. State*, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006). To reverse based on alleged factual sufficiency, we must be able to say, with some objective basis in the record, that the great weight and preponderance

of the evidence contradicts the verdict or the evidence is so weak that the verdict is clearly wrong and manifestly unjust. *Id*. at 414-15.

We must give due deference to the determinations of the trier of fact, which is the sole judge of the credibility of the witnesses and the weight to be given their testimony and is entitled to resolve conflicts and contradictions in the evidence. *In re S.J.*, 940 S.W.2d 332, 336-37 (Tex. App.–San Antonio 1997, no writ). This deference requires that we restrain from substituting our judgment for that of the trier of fact unless the record clearly requires a different result. *Johnson v. State*, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000).

### ANALYSIS

The State's petition alleged that on or about June 7, 2007, S.L.H. "did then and there intentionally and knowingly, with intent to commit THEFT, enter a habitation, without the effective consent of ANGEL TORRES, the owner of said habitation." S.L.H. contends the evidence is factually insufficient to show beyond a reasonable doubt that she entered the habitation with the intent to commit theft. S.L.H. argues she believed she had permission, as expressed by her mother, to be in the house to pick up items purchased by her aunt from Garcia. She contends her mistaken belief that she had permission to be in the home negated her intent, a question of fact. *See* TEX. PENAL CODE ANN. § 8.02(a) (Vernon 2003) (stating "[i]t is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense"); *Ramirez v. State*, 229 S.W.3d 725, 729 (Tex. App.–San Antonio 2007, no pet.) (holding that intent is question of fact). In other words, she claims the evidence is factually insufficient to find she acted with specific intent to commit theft. We disagree.

Intent may be inferred from the acts, words, and conduct of the accused. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *Ramirez*, 229 S.W.3d at 729. "In a prosecution for burglary, the intent to commit theft may be inferred from the circumstances." *Mauldin v. State*, 628 S.W.2d 793, 795 (Tex. Crim. App. 1982).

Leslie Garcia testified that on the evening of June 6, 2007, she began moving out of a house she shared with her boyfriend, Angel Torres, who was in jail for alleged domestic violence. Sarah Saenz Mendiola, a former co-worker, was helping her move. The work continued until the next day.

Garcia had agreed to sell Mendiola a television. Mendiola obtained a trailer and the television was loaded into the trailer. After unpacking her goods at her new apartment, Garcia went with Mendiola and unloaded the television at Mendiola's house. Later on June 7, Garcia dropped off Mendiola at a location not disclosed in the record. Mendiola made Garcia promise that she would go to her new apartment and not return to the old house that day. Garcia testified Mendiola was very persistent that Garcia not return.

Garcia later realized she had forgotten a few things and returned to the house around 6:00 p.m. She told the court that when she arrived she saw a truck she did not recognize backed into the driveway and an "older man" leaving the residence. The man re-entered the house and then he and three more people exited the house. In court, Garcia identified S.L.H. and her mother, S.H., as two of the people who exited the residence. The other individuals were identified as S.H.'s boyfriend and S.L.H.'s boyfriend. Garcia testified she did not know any of these individuals and when she asked "who they were and who had sent them and what they were doing in the house," each had a different story – one claimed they had subleased the house, another claimed the house "was open and it was available." S.L.H. told Garcia they were just looking at the house because it was available.

Garcia testified she called the police. She stated that when the individuals got into the truck and attempted to leave she blocked the driveway with her truck. After the police arrived, she observed several items in the truck that belonged to Torres. They included a grill normally kept on the sidewalk, some tools kept in the garage, and clothes from inside the house. In the house she observed items "packed up in bags by the front door," including clothes and movies. She testified the bags had not been there when she left; she had left everything in the house organized for Torres.

Garcia testified that a few days after the incident she learned that Mendiola was the sister of one of the persons caught at the house. Mendiola's mother later told Garcia that Mendiola had sent the individuals to the house to retrieve items because Mendiola claimed Garcia said she no longer "needed" the property. Mendiola asserted her Fifth Amendment rights when called by S.L.H. to testify at trial.

Garcia denied knowing any of the individuals she encountered outside her former residence. She also denied giving any of the individuals permission to be in the house or take any items from the house and further asserted Torres did not give them such permission.

The State called Torres as a witness. He testified that several items in the truck were his, including tools, clothing, and a barbeque pit. Torres also identified the items in the garbage bags by the front door, which included clothing, CDs, and DVDs, as his. He confirmed Garcia's testimony that he had not given anyone permission to enter his home or take items from the home. He denied knowing any of the individuals arrested that day.

The defense first presented Stella Saenz, S.L.H.'s aunt and godmother. Saenz testified she drove Sarah Saenz Mendiola to help Garcia move. Saenz claimed S.L.H. went to Garcia's house "to

pick up some items Sarah had purchased . . . from Leslie." Though she was not there, she thought S.L.H. had permission to be in the residence and retrieve items purchased by Mendiola.

Finally, S.L.H. testified on her own behalf. She admitted to being on probation for marijuana and admitted to a prior arrest for theft. She claimed she was at Garcia's residence to pick up "a refrigerator and a stove that my aunt had purchased from Leslie." She maintained she was told by her mother that they were at Garcia's to move items purchased by Mendiola from Garcia. She did not know who her mother got permission from or even to whom the house belonged. S.L.H. denied taking anything from the house. She stated that while they did not have keys to the house, the house was open when they arrived.

During cross-examination, S.L.H. claimed that while inside the house they looked for "the stuff that supposedly my aunt had purchased." She testified Garcia arrived about seven minutes after they entered the house. She admitted the stove and refrigerator were not yet in the truck but she and her boyfriend "were in the process of taking the fridge out" when Garcia arrived. S.L.H. denied putting any items in the truck or in the garbage bags found by the front door. She claimed the garbage bags were already by the door when they entered the house. She testified she "was not trying to commit a crime," but was "there to move the fridge and the stove." However, Garcia showed up and they "didn't have time to get nothing."

She denied telling Garcia they were at the house because it was "available." S.L.H. denied seeing anyone put any items from the Garcia house in the truck and stated the other persons were not in her sight at all times. S.L.H. also denied knowing about any of the items in the truck. She testified that on the way to Garcia's residence she rode in the bed of the truck because there was "like a bunch of stuff in the back seat of the cab so there was really nowhere else for us to sit." Despite

this absence of space for passengers, she seemed to suggest any items taken from Garcia's residence must have been placed inside the passenger compartment of the truck "because it wasn't where I was sitting," in the bed of the truck.

We hold there is sufficient evidence to support the judgment. S.L.H. admittedly entered a residence that did not belong to her without the consent of either owner. The consent she claimed to have came from her mother, who did not own the residence. When Garcia asked why she was there, S.L.H. told Garcia she thought the house was available. She did not assert, as she did at trial, that she was there to retrieve the stove and refrigerator Garcia had sold to Mendiola. There is no evidence either of those items had been moved from their original positions in the house. However, the evidence demonstrates the suspects, including S.L.H., had time to place in the truck property belonging to Torres and gather other property together in preparation to remove the property from the house.

Viewing all of the evidence in a neutral light, we cannot say the great weight and preponderance of the evidence contradicts the trial court's adjudication or is so weak to make the adjudication clearly wrong and manifestly unjust. Nor does the record clearly require a different result. Accordingly, we overrule S.L.H.'s sole issue and affirm the trial court's judgment.

Steven C. Hilbig, Justice