*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

# MEMORANDUM OPINION

No. 04-07-00776-CR

Jose **MARTINEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 218th Judicial District Court, Atascosa County, Texas
Trial Court No. 06-09-00240-CRA
Honorable Donna S. Rayes, Judge Presiding

Opinion by: Karen Angelini, Justice

Sitting: Karen Angelini, Justice
Sandee Bryan Marion, Justice
Rebecca Simmons, Justice

Delivered and Filed: March 11, 2009

AFFIRMED

Jose Martinez appeals his conviction for possession of methamphetamine with intent to deliver. Martinez challenges the sufficiency of the evidence to support the jury's findings and contends that he received ineffective assistance of counsel. We affirm the trial court's judgment.

## BACKGROUND

Corporal Matthew Dear, a seven year veteran in law enforcement, was dispatched for a fight in progress at the corner of an intersection. Corporal Dear recognized the intersection as being in the location where Mark Carter lived. Carter was known for dealing and using methamphetamine. As Corporal Dear arrived in the area, he observed a truck with three men seated in the cab and two men seated in the back who appeared sweaty. Corporal Dear stopped the truck, believing the men had been involved in the reported fight.

Before Corporal Dear could exit his vehicle, Martinez jumped out of the back of the truck and approached him. In response to whether he was involved in the fight up the road, Martinez stated it was not a fight – it was a disturbance, indicating that he had been present. Martinez was nervous. Corporal Dear told Martinez to place his hands on the truck, intending to pat him down for weapons. Before Corporal Dear was able to pat Martinez down, Martinez pulled his hands away from the truck. Corporal Dear placed Martinez in a hold, but Martinez was able to reach into his front pocket, retrieve an object, and throw it across the hood of the truck into the grass on the other side of the road. Another officer recovered the object which Corporal Dear identified as a methamphetamine pipe. Martinez was then arrested for possession of drug paraphernalia. When Corporal Dear searched Martinez incident to his arrest, he recovered a small bag of methamphetamine from Martinez's pocket. Another bag of methamphetamine was subsequently recovered from an area between the hood and the windshield of the truck where Martinez initially placed his hands.

The other four individuals in the truck also were placed in handcuffs and detained; however, none of those individuals had drug paraphernalia or methamphetamine on their persons. Several of

the individuals did, however, have large sums of cash in the amounts of $918.85, $1,520.77, $2,769.32, and $3,682.61. The individuals stated they were intending to purchase a four-wheeler.

The driver of the truck, Francisco Medina, consented to its search. In searching the truck, a dog food container with a false bottom was recovered that contained methamphetamine. Martinez told the officers that he used that container to smuggle narcotics across the river. Two additional methamphetamine pipes were also recovered from underneath the driver's seat in the truck. Corporal Dear also found bags in a hidden compartment inside the back seat door panel containing a large amount of methamphetamine. Corporal Dear testified that this was his largest methamphetamine seizure. In addition to the methamphetamine, a roll of ziploc bags were recovered. Corporal Dear testified that the ziploc bags could be used to package the methamphetamine into smaller amounts to be sold. Corporal Dear testified that one of the bags recovered from the hidden compartment contained methamphetamine weighing almost 100 grams, a second bag contained 250 grams of a substance that did not test positive as a controlled substance, and a third bag contained methamphetamine weighing 150 grams. Corporal Dear testified that defendants arrested for possession of a controlled substance for personal use typically possess under a gram of the controlled substance. With regard to the second bag, Corporal Dear testified that when methamphetamine is packaged for sale, dealers often use a cutting agent to make more money. Corporal Dear testified that the amount of narcotics indicated an intent to distribute and sell them. In addition, a scale was recovered from the truck which commonly is used to weigh out smaller amounts of narcotics to sell.

At the scene, Martinez only admitted to possessing the methamphetamine found on his person; however, in the statement he gave at the police station, he admitted to possessing all of the methamphetamine found in the truck. Corporal Dear could not recall whether Martinez was

transported from the scene to the police station with one of the other individuals. Corporal Dear acknowledged that Martinez might have had the opportunity to speak with one or more of the individuals during transportation to and at the police station.

Officer Mark Montgomery, a six year veteran in law enforcement, was dispatched to assist Corporal Dear. Officer Montgomery also identified the bags of methamphetamine recovered from the truck. Officer Montgomery stated that he did not witness Martinez and Medina talking. Officer Montgomery admitted that Martinez and Medina were in close contact at the police station.

Martinez testified that Medina and three men from Mexico approached him about buying four-wheelers. Martinez stated that he took them to Mark Carter's house where Martinez kept two four-wheelers. Upon arriving, Martinez became angry upon learning that Carter had pawned his four-wheelers. Martinez asked for Medina's phone to call the police, but Medina did not give him the phone. Martinez stated that he did not think about the pipe and methamphetamine in his pocket when he wanted to call the police.

When Martinez saw Corporal Dear, he testified that he jumped out of the truck to tell him about the four wheelers. Martinez admitted that he was in possession of the pipe and a small bag of methamphetamine that Medina had given him before they left his house to go to Carter's house. Martinez testified that he was unaware of the methamphetamine in the truck and only signed the statement taking the blame because Medina threatened him and his family. Martinez admitted that after being released from jail for the underlying offense, he was arrested approximately one month later for possession of 13 grams of methamphetamine and for possession of a gun. Martinez stated that the gun belonged to Medina. Martinez stated that he had loaned his truck to Medina after he was released from jail because Medina's truck had been seized.

**SUFFICIENCY OF THE EVIDENCE**

In reviewing the legal sufficiency of the evidence to support a criminal conviction, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007). In conducting a factual sufficiency review, this court views all of the evidence in a neutral light and sets aside the verdict only if: (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust; or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). In reviewing the factual sufficiency of the evidence, we "must be cognizant of the fact that a jury has already passed on the facts and must give due deference to the determinations of the jury." *Lancon v. State*, 253 S.W.3d 699, 704-05 (Tex. Crim. App. 2008).

A.    Possession

One of the elements of the offense that the State was required to prove was that Martinez exercised actual control, management or care over the controlled substance. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). "Regardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous." *Id*. "Mere presence at the location where drugs are found is [ ] insufficient, by itself, to establish actual care, custody, or control." *Id*. at 162. "However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., 'links'), may well be sufficient to establish that element beyond a reasonable doubt." *Id*. The following is a non-exclusive list of

factors that have been considered in determining whether a defendant is linked to a controlled substance: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Id*. at 162 n.12; *see also Hargrove v. State*, 211 S.W.3d 379, 385-86 (Tex. App.—San Antonio 2006, pet. ref'd). It is not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial. *Evans*, 202 S.W.3d at 162.

Applying the foregoing factors to the evidence presented in this case: (1) Martinez was arrested after jumping from the back of the truck which Corporal Dear testified was likely an effort to detract his attention from the truck; (2) Martinez was present when the search was conducted; (3) contraband was recovered from Martinez's pocket, from between the windshield and the hood of the truck where Martinez placed his hands, and from a hidden compartment inside the truck; (4) Martinez admitted that the dog container with the false bottom was his; (5) Martinez made an incriminating statement stating the he was in possession of all of the contraband; (6) Martinez testified that he made the incriminating statement due to Medina's threats but Martinez subsequently

loaned his truck to Medina after he was released from jail; and (7) Martinez made furtive gestures and threw a methamphetamine pipe that he retrieved from his pocket. The logical force of all of the evidence presented is sufficient to support the jury's finding that Martinez was in possession of the methamphetamine.

B.      Intent to Deliver

Intent to deliver is a question of fact for the jury to resolve. *Patterson v. State*, 138 S.W.3d 643, 649-50 (Tex. App.—Dallas 2004, no pet.). Intent to deliver can be proven by circumstantial evidence and may be inferred from acts, words, or conduct of the accused. *Utomi v. State*, 243 S.W.3d 75, 82 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). *Patterson*, 138 S.W.3d at 650. Factors a court may consider in determining whether the accused had the intent to deliver include: (1) the nature of the location at which the accused was arrested; (2) the quantity of contraband in the accused's possession; (3) the manner of packaging; (4) the presence, or lack thereof, of drug paraphernalia for either use or sale; (5) the accused's possession of large amounts of cash; and (6) the accused's status as a drug user. *Utomi*, 243 S.W.3d at 82. Expert testimony by experienced law enforcement personnel may also be used to establish an accused's intent to deliver. *Id*. at 82-83.

Applying these factors to the evidence presented in this case: (1) Martinez was arrested after a fight at a location where a known drug user or dealer lived; (2) Martinez was in possession of hundreds of grams of methamphetamine and another substance used as a cutting agent for packaging the methamphetamine for sale; (3) a scale and baggies were also recovered; (4) Corporal Dear testified that the quantity of methamphetamine was the largest he had ever seized and the quantity indicated it was to be distributed and sold; and (5) after being released from jail in relation to the instant offense, Martinez was subsequently arrested with additional amounts of methamphetamine.

The evidence is legally and factually sufficient to support the jury's finding that Martinez possessed the methamphetamine with an intent to deliver.

INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on an ineffective assistance of counsel claim, the defendant must demonstrate, by a preponderance of the evidence, that: (1) counsel's performance was so deficient as to fall below an objective standard of reasonableness; and (2) there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Thompson*, 9 S.W.3d at 813. Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.*

Martinez asserts trial counsel was ineffective because he failed to: (1) file pretrial motions; (2) request certain jury instructions; (3) make proper objections to the admission of extraneous offense conduct; and (4) ask certain questions on voir dire. Trial counsel, however, was never afforded an opportunity to explain his actions at an evidentiary hearing on a motion for new trial. Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). None of trial counsel's acts or omissions challenged by Martinez can be described as "outrageous." For example, the failure to file pre-trial motions and the failure to ask questions on voir dire are not categorically considered to be ineffective assistance of counsel. *Goodspeed*, 187 S.W.3d at 392-93; *Saenz v. State*, 103 S.W.3d 541,

545 (Tex. App.—San Antonio 2003, pet. ref'd). Because the record is silent, we will not speculate regarding the reasons for trial counsel's actions and decisions. *Ramirez v. State*, 229 S.W.3d 725, 731 (Tex. App.—San Antonio 2007, no pet.). Accordingly, Martinez has failed to rebut the presumption that counsel provided reasonable professional assistance. *Thompson*, 9 S.W.3d at 813. This opinion does not preclude Martinez from raising his ineffective assistance claim in an application for post-conviction writ of habeas corpus. *See Thompson*, 9 S.W.3d at 814-15 (noting recourse available for ineffective assistance of counsel claims via an application for writ of habeas corpus).

## CONCLUSION

The trial court's judgment is affirmed.

Karen Angelini, Justice

DO NOT PUBLISH