Opinion issued August 7, 2018



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-17-00758-CR

_____

**DERRICK WAYNE GAMBLE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 264th District Court**
**Bell County, Texas**
**Trial Court Case No. 75099**

## MEMORANDUM OPINION

Derrick Wayne Gamble was convicted for the murder of Chief of Police D. Allen of the Marlin Police Department. The jury recommended, and the trial court assessed, punishment at 95 years' confinement.

Gamble raises one issue—the evidence was insufficient to support the finding that he intentionally or knowingly caused Chief Allen's death. We affirm.

**Background**

Officer A. Kay of the Marlin Police Department arrived at an after-hours club in Temple[1] for off-duty work as security. She was to work security alongside Chief of Police D. Allen that night. Officer Kay noticed a vehicle parking in front of hers. Chief Allen arrived soon thereafter, and Officer Kay went to him to talk about that night's work. While they were talking, Officer Kay noticed two men exit the car parked near hers and approach the club's entrance. One wore a sweatshirt over a white t-shirt, and the other wore a letter jacket.

Officer Kay testified that the man in the letter jacket went ahead of the man in the sweatshirt to the club's entrance to stand in line. Something then dropped, and the man in the sweatshirt bent over, raking his hands through the grass near the club. This caused Chief Allen to react. He yelled at the man in the sweatshirt and

[1]    Gamble filed this appeal in the Court of Appeals of Texas for the Third District, but the Supreme Court transferred the appeal to this court. Misc. Docket No. 17-9128 (Tex. Sept. 28, 2017); *see* TEX. GOV'T CODE § 73.001 (authorizing such a transfer); *id.* § 73.002(a) (granting jurisdiction of transferred case to court to which case is transferred). We therefore "must decide the case in accordance with the precedent of the transferor court under principles of stare decisis if [this] court's decision otherwise would have been inconsistent with the precedent of the transferor court." TEX. R. APP. P. 41.3. We are unaware of any conflict between the Third Court of Appeals's precedent and that of this court on any relevant issue. *See, e.g.*, *Shoemaker v. State ex rel. C.L.*, 493 S.W.3d 710, 711 n.1 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

went to him. The man in the letter jacket turned around and saw Chief Allen yelling and "pop[ping]" his holster to draw his weapon.

Chief Allen and the sweatshirt-wearing man got into an "altercation" or "scuffle." Chief Allen "put hands on" the man and "slammed the guy against the wall" of the club. A gunshot went off. Chief Allen fell. He died in the hospital over a week later from a gunshot wound to the head.

The sweatshirt-wearing man ran, fleeing the scene. No testimony suggests that he lingered to render aid to Chief Allen. Officer Kay started to draw her weapon, but the man was already around the corner of the building. Officer Kay called 9-1-1 and went to Chief Allen.

Officers from the Temple Police Department soon arrived and took control of the scene. Amid this, a man wearing a white t-shirt arrived. He approached the scene from the direction of an open field behind the club. Officer Kay spotted the man; identified him as the shooter; and told him, "He told you to put it down. He told you to put the gun down." That man, Gamble, was arrested. His letter-jacket-wearing companion, K. Carlton, Gamble's cousin, was detained. Carlton told police that night that he "knew that Derrick had shot this officer."

Officers searched the field behind the club. They recovered from under a bush-like tree a sweatshirt matching the appearance of the one that Gamble was wearing when he arrived at the club, a stocking cap, and a Rossi .38 revolver. The

revolver was partially obscured by a leaf and was in the ready-to-fire position with its hammer cocked back. Of the revolver's cylinder's five chambers, one held a spent casing, three held unfired cartridges, and the last was empty.

Gamble was indicted for capital murder for killing a peace officer. At trial, the State offered testimony from Officer Kay, Carlton, and other fact witnesses. The State also offered testimony from experts.

An FBI forensic examiner testified that fibers taken from the white t-shirt and shorts that Gamble was wearing when he was arrested matched fibers from the sweatshirt recovered from behind the club.

Another FBI forensic examiner testified that the recovered revolver bore two men's DNA and that it was 86 times more likely than not that one of those two men was Gamble. She also testified that DNA recovered from the stocking cap was 700 billion times more likely than not to be Gamble's.

An FBI firearm examiner testified that one of the bullet fragments removed from Chief Allen's head was fired either from a Rossi .38 revolver or from a Winchester .22 revolver rifle, but he could not opine that the fragment was fired by the particular Rossi .38 revolver recovered from behind the club. He also testified that the recovered revolver could be fired either in a single or double action. To fire it in a single action, a shooter would first need to cock back the revolver's

4

hammer. But to fire it in a double action, a shooter would only pull the trigger, which requires much more pressure than a single-action trigger pull would.

The jury convicted Gamble of the lesser-included offense of murder. Gamble pleaded true to an enhancement paragraph. The jury recommended, and the trial court assessed, punishment at 95 years' confinement. Gamble appealed.

## Sufficiency of the Evidence of Whether Gamble Intentionally or Knowingly Caused Chief Allen's Death

Gamble contends that the evidence was insufficient for the jury to find that he intentionally or knowingly caused Chief Allen's death. Specifically, he contends that the jury could not reasonably infer that Gamble intended to use, and did use, the recovered revolver to shoot Chief Allen.

### A.    Standard of review and applicable law

We review evidence sufficiency under the standard from *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19.

Our review includes both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from that evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence alone can establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

"Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* We "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

The jury is the sole judge of the credibility of the witnesses and of the weight given to their testimony, so any conflicts or inconsistencies in the evidence are resolved in favor of the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). "Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). It is for the jury, not us, "fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *accord Isassi*, 330 S.W.3d at 638.

A person commits murder when he or she intentionally or knowingly causes the death of an individual. TEX. PENAL CODE § 19.02(b)(1). "A person acts intentionally . . . with respect . . . to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 6.03(a). "A

6

person acts knowingly . . . with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.* § 6.03(b).

"Intent can be inferred from the acts, words, and conduct of the accused."[2] *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995); *accord Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). The jury may also rely on collective common sense and knowledge when determining the accused's mental state. *See Allen v. State*, No. 14-14-00844-CR, 2015 WL 6948710, at *3 (Tex. App.—Houston [14th Dist.] Nov. 10, 2015, pet. ref'd) (mem. op., not designated for publication); *Gamez v. State*, No. 03-13-00302-CR, 2015 WL 3745454, at *6 (Tex. App.—Austin June 11, 2015, pet. ref'd) (mem. op., not designated for publication); *Ramirez v. State*, 229 S.W.3d 725, 729 (Tex. App.—San Antonio 2007, no pet.). For example, a jury may infer the accused's mental state from the accused's attempts to conceal incriminating evidence or flight from the scene. *See Guevara*, 152 S.W.3d at 50; *Allen*, 2015 WL 6948710, at *3.

"[T]he specific intent to kill may be inferred from the use of a deadly weapon." *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012). A firearm, as was alleged in the indictment here, is a deadly weapon. *See* TEX. PENAL CODE § 1.07(a)(17)(A).

---

[2]  "Conduct" differs from "acts" because "conduct" includes either "action *or inaction*" and "the *manner* in which a person behaves." *Conduct*, BLACK'S LAW DICTIONARY (9th ed. 2009) (emphases added).

7

**B.    The evidence was sufficient**

We examine the evidence's cumulative logical effect to determine whether the evidence reasonably allowed the jury to infer that Gamble knowingly used the revolver to shoot Chief Allen. *See Murray*, 457 S.W.3d at 448; *Hooper*, 214 S.W.3d at 13. If it did, then the jury could infer Gamble's specific intent to kill. *See Cavazos*, 382 S.W.3d at 384.

The cumulative logical effect of the evidence reasonably allows for three interrelated inferences that support Gamble's conviction—Gamble handled the revolver, the same revolver was used to shoot Chief Allen, and Gamble knowingly used that revolver.

The jury could reasonably infer that Gamble handled the revolver. The revolver was recovered from beneath a bush-like tree where Gamble's sweatshirt, linked to him by the fiber testimony, and Gamble's stocking cap, linked to him by the DNA testimony, also were recovered. Gamble returned to the scene from the direction where the sweatshirt, stocking cap, and revolver were recovered. The revolver's placement under the bush-like tree and the leaf reasonably supports an inference that Gamble attempted to conceal the revolver. Also, DNA testimony links Gamble to the revolver. Therefore, Gamble's acts and conduct, and the jurors' common sense and knowledge, reasonably support an inference that Gamble handled the revolver. *See Guevara*, 152 S.W.3d at 50; *Patrick*, 906

8

S.W.2d at 487; *Allen*, 2015 WL 6948710, at *3; *Gamez*, 2015 WL 3745454, at *6; *Ramirez*, 229 S.W.3d at 729.

The jury also could reasonably infer that the same revolver was used to shoot Chief Allen. When Gamble returned to the scene, Officer Kay identified him as the shooter and said, "He told you to put it down. He told you to put the gun down." According to the FBI firearm examiner, Gamble's revolver matched one of the two kinds of firearms that could have fired the bullet, a fragment of which was recovered from Chief Allen's head.[3] Gamble's attempt to conceal the revolver after fleeing also supports an inference that the recovered gun was used to shoot Chief Allen. *See Guevara*, 152 S.W.3d at 50; *Allen*, 2015 WL 6948710, at *3.

Finally, the jury could reasonably infer that Gamble knowingly used the revolver. After the gunshot, Gamble fled the scene, failed to render aid to Chief Allen, disguised his appearance by removing his sweatshirt, and hid the revolver. *See Clayton*, 235 S.W.3d at 780 (recognizing that accused's flight from scene after

---

[3]   The firearm examiner could not conclusively link the fragment to the particular Rossi .38 revolver recovered from behind the club. But this does not negate the reasonable inference that, because a Rossi .38 revolver was one of the kinds of guns that could have fired the bullet whose fragment was recovered from Chief Allen's body, the Rossi .38 revolver recovered with Gamble's clothes was indeed the revolver used to shoot Chief Allen. *See, e.g.*, *Burrell v. State*, No. 14-01-01136-CR, 2003 WL 124287, at *2 (Tex. App.—Houston [14th Dist.] Jan. 16, 2003, pet. ref'd) (not designated for publication) (holding that sufficient evidence supported murder conviction notwithstanding firearm examiner's testimony "that the weapon *was likely* a Kel-Tec" (emphasis added)).

gunshot allows factfinder to "draw an inference of guilt"); *Miller v. State*, 177 S.W.3d 177, 184 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (holding that sufficient evidence supported essential elements of murder in part because of accused's "flight immediately after the shooting and his attempts to hide evidence"). Carlton told police that night that he "knew that Derrick had shot this officer." When the revolver was recovered, it was in the ready-to-fire position with its hammer cocked back. Cocking the revolver's hammer back allows a shooter to fire the revolver by using much less force to pull the trigger. The revolver fired during the physical altercation between Gamble and Chief Allen. *See Watkins v. State*, 333 S.W.3d 771, 780–81 (Tex. App.—Waco 2010, pet. ref'd) (holding evidence sufficient to support finding that Watkins had specific intent to kill in part because "Watkins's .45 caliber handgun discharged" during struggle with victim and because Watkins fled). Some testimony indicates that Chief Allen was starting to draw his weapon too. This evidence allows for the reasonable inference that Gamble knowingly used the revolver in response to Chief Allen. *See Guevara*, 152 S.W.3d at 50; *Allen*, 2015 WL 6948710, at *3.

Because the jury could reasonably infer Gamble's knowing use of the revolver to shoot Chief Allen, sufficient evidence supports the necessary finding that Gamble had the requisite intent to kill Chief Allen. *See Cavazos*, 382 S.W.3d at 384; *see also Womble v. State*, 618 S.W.2d 59, 64 (Tex. Crim. App. [Panel Op.]

1981) ("[W]here a deadly weapon is fired at close range and death results the law presumes an intent to kill."). We therefore overrule Gamble's sole issue.

## Conclusion

Sufficient evidence exists to support the jury's finding that Gamble intentionally or knowingly caused Chief Allen's death. We therefore affirm the trial court's judgment.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.

Do Not Publish. TEX. R. APP. P. 47.2(b).

11