**Affirmed and Opinion Filed December 12, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00832-CR**

**MARGARET ANN JOHNSTON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 86th Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 21-10851-86F**

## MEMORANDUM OPINION

Before Justices Carlyle, Goldstein, and Breedlove
Opinion by Justice Breedlove

Appellant Margaret Ann Johnston was convicted of murder after a jury trial and sentenced to life imprisonment. Appellant appeals, complaining that the evidence was legally insufficient to support the verdict. We affirm the trial court's judgment.

## I.     BACKGROUND

On September 14, 2021, Cindy Rowan-Stutts was on the phone with her half-sister, Connie Helms, when she heard Connie yelling and a gunshot go off while Connie was at appellant's house. As soon as Connie began screaming, Cindy started

to drive to Appellant's house. Appellant is Connie's mother and was 80 years old at the time. Appellant picked up Connie's phone and told Cindy to call 911. Cindy called 911 while driving to appellant's house. When Cindy arrived, she found appellant leaning over Connie attempting to perform CPR. Connie had been shot in the arm. Appellant had the gun she had shot Connie with in her front pocket, and Cindy was scared that appellant would also shoot her after appellant said to her, "You little bitch. You believe everything this little bitch had to say. Cindy returned to her car at the end of the drive to wait for police to arrive. When police arrived, they attempted, unsuccessfully, to resuscitate Connie.

Because of appellant's health conditions, Connie occasionally drove up from Galveston to care for appellant. On the date of the murder, Connie was in town to take appellant to the doctor. During the sisters' phone conversation, Connie told Cindy about an incident between herself and appellant earlier in the day. Appellant needed to get a COVID-19 test in order to proceed with a surgery scheduled that week. Connie told Cindy that appellant had gotten mad and began punching Connie. However, appellant told police that in fact Connie had gotten mad at appellant and began scratching her while they were in a carwash. Cindy later heard appellant in the background of their phone call saying it was Connie's fault she would be unable to have her surgery because she could not get a COVID test.

At some point during their call, Connie's tone changed, and she screamed Cindy's name several times, immediately followed by a gunshot. Cindy then heard

Connie ask for help. Cindy testified that appellant asked Connie, "How does it feel to be dying, you little bitch?" Cindy heard Connie ask for help again, and then she heard a gurgle, and she knew Connie was dead. Appellant then asked, "How does it feel to be dead, you little bitch?" Appellant picked up the phone and said, "Cindy, Cindy, I need you to call 911. I shot Connie. I only shot her in the arm, but she's acting like she's dead."

Deputy Robert Dominguez was dispatched to appellant's house in Kaufman County. Officers retrieved a .38 revolver with one spent cartridge from appellant's pocket; Connie was unarmed. Appellant told police on the scene that Connie "went to get her gun out of her car." Appellant said that Connie had been threatening her since July and that she was "meaner than hell." Appellant accused Connie of trying to kill her and scratching her arms in the car earlier that day. Officer Mitchel Hempel saw the scratches on appellant's arms but did not believe appellant's version of events. Dominguez testified that appellant appeared calm, matter of fact, and almost unemotional. Investigator Justin Guy learned that she kept the gun in her bedroom. Guy also observed information regarding nursing homes inside appellant's house.

During her interview with Hempel at the scene, appellant confessed several times to shooting her daughter deliberately. Appellant tried, unsuccessfully, to get Connie to leave the property before going into the house to get her firearm with the intention of shooting Connie. Appellant said she shot Connie because she was afraid Connie was going to shoot her. Appellant "felt as if Connie was gonna go get her

gun out of her car," and officers found a gun in Connie's vehicle. However, appellant also admitted that Connie did not have any weapons on her at the time she was shot. Appellant did not deny saying "Are you dead yet, you little bitch," to Connie, but she did deny shooting Connie out of anger.

Appellant told police she was angry with Connie about the COVID test and because Connie was planning to put her in a nursing home. Appellant said that Connie had threatened her in the past but not on the day of the shooting. Appellant further theorized that Connie was trying to get her diagnosed with Alzheimer's and early dementia because she was trying to take appellant's property away from her.

An autopsy of Connie's body was performed. A bullet was removed from Connie's right ventricle. Dr. Jessica Dwyer, a forensic pathologist, testified that the bullet had entered the back of Connie's right upper arm, traveled into the right upper chest, striking the right lung, and ultimately penetrating Connie's heart.

Appellant was tried before a jury on August 1, 2022. The charges of murder and manslaughter were presented to the jury. The jury found appellant guilty of murder as charged in the indictment. The court sentenced her to life imprisonment. Appellant moved for a new trial on August 22, 2022, which was denied by operation of law. TEX. CODE CRIM. PROC. ANN. art. 45.038(b). This appeal followed. In one issue, appellant complains that the evidence was legally insufficient to support the verdict.

## II. STANDARD OF REVIEW

In determining whether the evidence is sufficient to support a criminal conviction, we apply well-established standards. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979). We view the evidence in the light most favorable to the verdict and determine whether a rational factfinder could have found all the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 313; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The jury, as the fact-finder, may make reasonable inferences from the evidence presented at trial in determining appellant's guilt. *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007). When there is conflicting evidence, we presume the jury resolved those conflicts in favor of the verdict and defer to that resolution so long as it is supported by the evidence. *Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

We also defer to the trier of fact's determinations of witness credibility and the weight to be given their testimony. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. Our role as an intermediate appellate court is restricted to guarding against the "rare occurrence when a factfinder does not act rationally." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (quoting *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009)).

## III.   DISCUSSION

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual.  *See* TEX. PENAL CODE ANN. § 19.02(b)(1). Alternatively, she also commits the offense when she intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *Id*. at § 19.02(b)(2).

"A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.  A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.* at § 6.03(b). "A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* at § 6.03(c).

Intent, being a question of fact, is in the sole purview of the jury. *Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003).  A jury may rely on collective common sense and common knowledge when determining intent. *Cravens v. State*,

No. 05-21-00947-CR, 2022 WL 17248836, at *2 (Tex. App.—Dallas Nov. 28, 2022, no pet.) (mem. op., not designated for publication) (citing *Ramirez v. State*, 229 S.W.3d 725, 729 (Tex. App.—San Antonio 2007, no pet.)).  Intent also may be inferred from the circumstantial evidence surrounding the incident, which includes the acts, words, and conduct of the accused.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.36(a); *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995).  "Attempts to conceal incriminating evidence, inconsistent statements, and implausible explanations to the police are probative of wrongful conduct and are also circumstances of guilt."  *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

"[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force."  TEX. PENAL CODE ANN. § 9.31(a).  "An actor is justified in using deadly force if, among other things, the actor reasonably believes deadly force is immediately necessary to protect the actor against another's use or attempted use of unlawful deadly force."  *Cravens*, 2022 WL 17248836, at * 2 (citing *Green v. State*, 589 S.W.3d 250, 255 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd); TEX. PENAL CODE ANN. § 9.32(a)(1)–(2)(A)).

In a claim of self-defense, defendant bears the burden to produce evidence supporting the defense.  *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *Moralez v. State*, 450 S.W.3d 553, 565 (Tex. App.—Houston [14th Dist.]

2014, pet. ref'd). The defendant's burden of production requires her to adduce some evidence that would support a rational finding in her favor on the defensive issue. *Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013).

After a defendant satisfies her burden by producing some evidence that supports self-defense, the State then bears the burden of persuasion to disprove self-defense. *Braughton* at 608. The State's burden of persuasion "is not one that requires the production of evidence; rather it requires only that the State prove its case beyond a reasonable doubt." *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Therefore, in resolving the evidentiary sufficiency issue, we look not to whether the State presented evidence that refuted evidence of self-defense, but rather we determine whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914; *Braughton*, 569 S.W.3d at 609.

In her brief, appellant argues that the evidence is legally insufficient to support the verdict because she presented evidence of self-defense which the State did not rebut.[1] Appellant's defense is premised on her testimony regarding her account of

---

[1] Appellant does not challenge the sufficiency of any specific element of the crime and limits her challenge to the jury's rejection of her self-defense theory. Therefore, we address only those arguments made by appellant.

–8–

the altercation between herself and Connie as well as the scratches on her arms. However, the jury was the sole judge of credibility on this issue. *See e.g., Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (when record supports conflicting inferences we presume the jury resolved the conflicts in favor of the verdict); *Rodriguez v. State*, 546 S.W.3d 843, 860 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (jury not required to accept defense claims). The jury heard testimony from Cindy saying that appellant had said "how does it feel to be dead, you little bitch?" immediately after shooting Connie as well as appellant's own testimony to police that she had shot Connie intentionally and that Connie was unarmed at the time of the shooting. They also heard testimony from Hempel, who did not believe appellant's version of events regarding the altercation earlier in the day.

The jury, rather than appellant, is the judge of credibility of the witnesses and their testimony, and they were entitled to believe the testimony of Cindy and Hempel over the conflicting and contradictory testimony of appellant. *See Clayton*, 235 S.W.3d at 778. Based on our review of the record, we conclude a rational trier of fact could have rejected the self-defense theory and reasonably found the elements of murder beyond a reasonable doubt. *See Braughton*, 569 S.W.3d at 609. We overrule appellant's sole issue.[2]

---

[2] Appellant's brief requests the Court to acquit defendant or, alternatively, to reform the judgment to find appellant guilty of only the lesser included offense of manslaughter. However, as discussed above, because

–9–

## IV.    CONCLUSION

We affirm the trial court's judgment.



220832f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)

/Maricela Breedlove/
MARICELA BREEDLOVE
JUSTICE

---

there is legally sufficient evidence to support the elements of murder beyond a reasonable doubt, we uphold the jury's verdict of murder. *See Braughton*, 569 S.W.3d at 609.

–10–



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

MARGARET ANN JOHNSTON, Appellant

No. 05-22-00832-CR V.

THE STATE OF TEXAS, Appellee

On Appeal from the 86th Judicial District Court, Kaufman County, Texas
Trial Court Cause No. 21-10851-86F. Opinion delivered by Justice Breedlove. Justices Carlyle and Goldstein participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 12th day of December, 2023.