

# IN THE
# TENTH COURT OF APPEALS

No. 10-12-00211-CR

**DEBRA RUTH HENDERSON,**

Appellant

v.

**THE STATE OF TEXAS,**

Appellee

From the 40th District Court
Ellis County, Texas
Trial Court No. 36,090CR

## MEMORANDUM OPINION

Debra Ruth Henderson appeals from her conviction for murder for which she was sentenced to life in prison. TEX. PEN. CODE ANN. § 19.02 (West 2005). Henderson complains that the evidence was insufficient for the jury to have determined beyond a reasonable doubt that she intentionally or knowingly caused the death of Marian Parsons, that the trial court abused its discretion in the admission of fourteen photographs of Parsons' remains, and that the cumulative error of the admission of the

photographs constituted reversible error. Because we find no error, we affirm the judgment of the trial court.

## *Sufficiency of the Evidence*

In her first issue, Henderson complains that the evidence was insufficient for the jury to have found beyond a reasonable doubt that she intentionally or knowingly caused the death of Parsons. The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson v. Virginia*, 443 U.S. at

326. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

A person commits the offense of murder if the person intentionally or knowingly causes the death of an individual. TEX. PEN. CODE ANN. § 19.02(b)(1) (West 2011). Henderson does not argue that she did not cause the death of Parsons but that the evidence was insufficient to establish that Parsons' death was caused intentionally or knowingly.

Intent, being a question of fact, is in the sole purview of the jury. *Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003). A jury may rely on collective common sense and common knowledge when determining intent. *Ramirez v. State*, 229 S.W.3d 725, 729 (Tex. App.—San Antonio 2007, no pet.). Intent may be inferred from the circumstantial evidence surrounding the incident, which includes acts, words, and conduct of the accused. *See* TEX. CODE CRIM. PROC. ANN. art. 38.36(a) (West 2005); *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). Each fact need not point directly or independently to Henderson's guilt; the verdict will be upheld as long as the cumulative effect of all the incriminating facts are sufficient to support the verdict. *See*

*Guevara v. State*, 152 S.W.3d 45, 52 (Tex. Crim. App. 2004) (stating that although each piece of evidence lacked sufficiency in isolation, the consistency of the evidence and the rational inferences drawn were sufficient to support the State's theory that the accused was a participant in the murder of his wife). Further, "[a]ttempts to conceal incriminating evidence, inconsistent statements, and implausible explanations to the police are probative of wrongful conduct and are also circumstances of guilt." *Guevara*, 152 S.W.3d at 50 (involving evidence that appellant made several false statements to authorities, which suggested appellant's complicity in the crime).

*Factual Background*

Marian Parsons was reported missing by Robert Sterling, the man with whom she was living on December 3, 2010. Parsons had not been seen since December 1, 2010, but Sterling thought she had gone to stay with friends because they were having problems. Parsons' ex-husband had spoken with Parsons on the afternoon of December 1, and Parsons told him she had to go help Henderson retrieve an ATV that was stuck in a pasture.

Debra and Bobby Henderson were neighbors of Sterling and Parsons and were leasing Sterling's land to run cattle. Debra Henderson and Parsons were friends. Parsons had loaned Henderson $2,700 in October of 2010. Henderson came over to Sterling's house when the investigation started surrounding Parsons' disappearance and Henderson denied having any knowledge of Parsons' whereabouts.

Within two days of Parsons' disappearance, Henderson was seen on video unsuccessfully attempting to use Parsons' ATM card and successfully using Parsons' credit card to make purchases and get cash withdrawals at Wal-Mart. Henderson admitted stealing the cards but claimed that she did it while they were at breakfast on the morning of December 1. Henderson had been desperate for money and in November and December of 2010, she unsuccessfully attempted to borrow $5,000 from two acquaintances of the Hendersons without Bobby's knowledge. Unbeknownst to Bobby, in December of 2010 the Hendersons were three months behind on their mortgage.

On March 19, 2011, Bobby Henderson found a human skull near a fence on his property. After a search of the surrounding areas, Parsons' remains were located in a ravine nearby. The remains were buried under a large piece of sheet metal that weighed approximately 68 pounds, cement blocks, trash, and old tires. Parts of Parsons' body were missing and the remains had been heavily scavenged by animals.

A dive team discovered a Hi-Point nine millimeter handgun in a private pond approximately seventy feet from where Parsons' remains were discovered. The gun was purchased by Bobby Henderson and was reported stolen in April of 2010. The gun was jammed by a bullet and had six other bullets in it when it was discovered.

The medical examiner testified that the remains had been highly scavenged by animals and Parsons' organs, one of her entire arms, and her other hand were

completely missing. The head was detached and the skull found by Bobby was identified as that of Parsons from dental records. Other bones were found in the nearby fields. Parsons had multiple broken ribs but the examiner could not determine when they were broken. However, the bones did not show signs of healing and were therefore likely fractured at the time of death or thereafter. There were two round abdominal defects which could have been caused by stabbing or gunshot wounds. Toxicology testing conducted on muscle tissue found ketamine, a drug commonly used to quickly anesthetize animals, in her system, which was highly suspicious to the examiner. Ketamine is rarely used on or by humans because it causes unpleasant hallucinations and side effects, but could be lethal if given in a large dose. The examiner determined the cause of death to be homicide but the means of death was unknown due to the decomposition.

A forensic anthropologist who then examined the remains testified that he believed the abdominal defects, which consisted of one 11-millimeter round wound and one oblong wound measuring 11 millimeters by 17 millimeters, were an entry and exit gunshot wound. The anthropologist's examination showed smooth edges to those wounds and no signs of scavenging by animals or insects, which would be evidenced by tooth marks and rough edges. The anthropologist also opined that the broken ribs could not have been caused by a wheel running over the body because of the pattern of the breaks and the total lack of damage to the bones in the spinal column. Further, the

anthropologist testified that a fall could not have caused the rib fractures. The cause of death by the anthropologist was determined to be homicidal violence and gunshot injury could not be excluded as the cause of death.

During the time prior to the discovery of Parsons' body, Henderson made several statements to law enforcement which were recorded both in writing and on video. In her statement made in late December, Henderson attempted to shift the focus of the investigation to Sterling, but she did admit to stealing and using the debit and credit cards. On March 19, after Parsons' skull was found, Henderson made another statement but only described finding the skull with her husband. The next day Henderson admitted that she had accidentally killed Parsons by running over her with the ATV they were riding in after Parsons fell out of it. Henderson contended that she panicked and hid the body in the ravine by covering it with the sheet metal and a tire. Henderson and an investigator later met at the scene and Henderson attempted to describe and demonstrate what had occurred; however, law enforcement was unable to recreate what Henderson had described and believed it to be impossible. After the gun was discovered, Henderson admitted throwing the gun into the pond because it was jammed but contended that she had done that prior to Parsons' death.

*Analysis*

Henderson's inconsistent statements that each admitted additional facts describing her culpability in Parsons' death support the jury's finding that Henderson

intentionally or knowingly caused Parsons' death. *See Guevara*, 152 S.W.3d at 50; *Alexander v. State*, 229 S.W.3d 731, 740 (Tex. App.—San Antonio 2007, pet. ref'd.) (stating evidence was sufficient to support jury's finding that defendant intentionally caused the death of victim when defendant provided inconsistent statements about how the victim's injuries occurred and those statements contradicted medical evidence). Further, the jury could have reasonably inferred the requisite intent from the fact that she hid the body after Parsons' death. *See Reeves*, 969 S.W.2d at 479 (providing the jury was free to infer that the defendant was disposing of incriminating evidence). Henderson was the last person to see Parsons alive. *See Reeves v. State*, 969 S.W.2d 471, 479 (Tex. App.—Waco 1998, pet. ref'd.) (involving evidence that the accused was the last to see the complainant alive, had the best opportunity and motive to kill the complainant, and attempted to get rid of incriminating evidence as legally sufficient evidence to support that the accused caused the complainant's death). Henderson had borrowed money from Parsons approximately six weeks prior to Parsons' disappearance and Henderson was desperately attempting to borrow additional money from others without her husband's knowledge.

Henderson also argues that because the cause of Parsons' death could not be determined there was insufficient evidence to establish with any degree of certainty what actually occurred that afternoon and that this rendered the evidence insufficient to establish that she intentionally or knowingly caused Parsons' death. However, it is not

necessary that the exact cause of death be determined. *See Scott v. State*, 732 S.W.2d 354, 359 (Tex. Crim. App. 1987). The indictment alleged that Henderson intentionally or knowingly caused the death of Parsons "by shooting her with a firearm, or running over her with a motor vehicle or poisoning her or by a manner and means unknown to the grand jury." The medical examiner and the forensic anthropologist determined the manner of death to be a homicide. The medical examiner testified that the final determination to the cause of death was inconclusive. The forensic anthropologist testified that in his opinion, based on the holes found in Parsons' abdomen, Parsons most likely died from a gunshot wound. The forensic anthropologist further testified that the broken ribs could not have been caused by being run over by the ATV because of their pattern and the lack of corresponding injury to Parsons' vertebrae. The ketamine found in Parsons' muscle tissue was highly suspicious to the medical examiner.

These factors, especially when combined, are sufficient to support the jury's conclusion of Henderson's intent to cause Parsons' death. *See Reeves*, 969 S.W.2d at 479-80. Viewing the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found beyond a reasonable doubt that Henderson intentionally or knowingly caused the murder of Parsons. The evidence was sufficient for the jury to have found Henderson guilty beyond a reasonable doubt. We overrule issue one.

*Admission of Evidence*

In issues two through fifteen, Henderson complains that the trial court abused its discretion in the admission of photographs taken of Parsons' remains at the crime scene and photographs taken of Parsons' remains that were used in conjunction with the forensic anthropologist's testimony because the probative value of the photographs was greatly outweighed by unfair prejudice and the photographs were duplicative of other photographs previously admitted. *See* TEX. R. EVID. 403.

In issues two through seven, Henderson complains of the admission of six photographs that depict the condition of Parsons' remains as discovered several months after Parsons' death. Issue two complains of a photograph of Parsons' skull as it was found by Bobby Henderson, Henderson's husband. Issue three complains of a photograph taken from a side angle of the remains of Parsons' body as it was found after the sheet metal and other debris were removed. Issue four complains of a photograph of Parsons' right thigh and waist. Issue five complains of a photograph of Parsons' remains down to her waist. Issue six complains of a photograph of Parsons' legs and feet. Issue seven complains of a photograph of Parsons' right shoe. These photographs were admitted during the testimony of a criminal investigator present at the scene.

In issues eight through fifteen, Henderson complains of the admission of eight photographs that were admitted during the testimony of the forensic anthropologist.

Issue eight complains of a photograph of Parsons' remains at the scene where the remains were discovered.  Issue nine complains of a photograph of Parsons' remains which has a circle and a notation "Area of intense scavenging."  Issues ten and eleven complain of photographs of Parsons' remains from a side angle which are similar to those complained of in issue three.  Issue twelve complains of a photograph of Parsons' remains which had arrows pointing to two round holes in Parson's abdomen and was notated, "Probable projectile path."  Issue thirteen complains of a photograph of Parsons' legs and right shoe.  Issue fourteen complains of a photograph of Parsons' remains with arrows pointing to the two round holes in Parsons' abdomen and was notated, "Ballistic defects."  Issue fifteen complains of a photograph of Parsons' remains from the front with arrows to the two round holes and the notation, "Ballistic defects."

*Standard of Review*

Under rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence.  TEX. R. EVID. 403.  Rule 403 carries a presumption that relevant evidence will be more probative than prejudicial and favors the admission of relevant evidence.  *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007).  When the evidence is a photograph, if the photograph has elements that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the helpful aspects are

substantially outweighed by the emotional and prejudicial aspects. *Erazo v. State*, 144 S.W.3d 487, 491-92 (Tex. Crim. App. 2004). Photographs depicting matters described by admissible testimony are generally admissible. *Erazo*, 144 S.W.3d at 489.

Our analysis of the trial court's ruling pursuant to rule 403 includes, but is not limited to, the following factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational yet indelible way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). In determining whether the probative value of a photograph is substantially outweighed by the danger of unfair prejudice, relevant factors include "the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case." *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009).

We review the trial court's ruling on the admissibility of a photograph under an abuse of discretion standard and will not reverse the trial court's ruling unless it falls outside the zone of reasonable disagreement. *See Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009). In this determination, we must do more than decide whether the trial court conducted the required balancing analysis between probative and

prejudicial values.  *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006).  We must also determine that the trial court's ruling is reasonable in view of all the relevant facts.  *Id*.

"If a photograph is competent, material and relevant to the issue on trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury."  *Erazo*, 144 S.W.3d at 489.  The probative value of a color photograph or a videotape depicting the recovery of a murder victim's body may outweigh its prejudicial effect even when the depiction includes close-ups and lingering camera angles, so long as the images simply reflect the gruesomeness of the offense.  *See Ripkowski v. State*, 61 S.W.3d 378, 392 (Tex. Crim. App. 2001).  Similarly, the probative value of a series of autopsy photos of murder victims may outweigh its prejudicial effect when the series of photos is used to assist a medical examiner's testimony.  *Newbury v. State*, 135 S.W.3d 22, 43 (Tex. Crim. App. 2004).

*Balancing Factors*

(1) Probative Value

The crime scene photos were used during direct examination of one of the investigating officers to describe the crime scene, the injuries suffered by Parsons, and the evidence obtained at the crime scene to support testimony as to the difficulty

determining the time of Parsons' death and the difficulty determining the cause of Parsons' death.

While somewhat gruesome, the crime scene photos are relevant because they accurately reflect the location and state of Parsons' body when it was discovered and reflect one of the enumerated potential causes of death, by shooting. *See Ripkowski*, 61 S.W.3d at 392. Such depictions give the photos substantial probative value. *Id*. The crime scene photographs support testimony that Parsons was killed and her body was left in a manner that allowed it to be scavenged by animals. The photographs of Parsons' remains support the testimony by the medical examiner as to the difficulty in determining Parsons' cause of death and the decomposition of the body that occurred during the period Parsons was missing, which supported the testimony as to the date and circumstances of the crime having taken place several months prior to the discovery of Parsons' remains. Further, the photos introduced during the testimony of the forensic anthropologist were also used to assist his testimony as to his opinion of the cause and manner of Parsons' death. *Newbury*, 135 S.W.3d at 43. We find that the photos had substantial probative value. *Ripkowski*, 61 S.W.3d at 392.

(2) Potential to Impress Jury in Irrational, Indelible Way

While the photos make an indelible impression, they do not depict more than the nature of the crime and the outcome of Henderson's efforts to conceal the crime. *Ripkowski*, 61 S.W.3d at 392. Additionally, the photos also help to date the crime to a

time shortly after Parsons disappeared. We do not believe that any of these images simply appeal to the jury's emotion to lead the jury to make an irrational verdict. *Erazo*, 144 S.W.3d at 494-95. The photos are, therefore, unlikely to render the jury irrational and incapable of making a sober assessment of the facts. *Id*. at 495. This factor likewise weighs in favor of admissibility of both sets of photos.

(3) Time Needed to Develop Evidence

When the State began questioning regarding the photographs, the trial court conducted a hearing outside of the presence of the jury on the admissibility of all of the photos and overruled each of Henderson's objections. During trial, the State used the photos complained of in issues two through seven during direct testimony of a crime scene investigator and the photos complained of in issues eight through fifteen through the testimony of the forensic anthropologist. Once the trial court had overruled Henderson's objections and ruled in favor of admissibility of the photos, there was not an undue amount of time spent describing them to the jury. This factor weighs in favor of admissibility of both sets of photos.

(4) Proponent's Need for Evidence

Henderson argued to the trial court and to this Court that the photographs were not needed because the oral testimony was sufficient to describe the condition of Parsons' remains when they were discovered. However, Henderson also argued that the death of Parsons was accidental and the visual aid of the remains and the potential

gunshot wounds were highly significant when the cause of death was contested. Because the photos supported testimony as to one potential cause of death, the difficulty in determining other causes of death due to scavenging and decomposition, and aided in establishing the time and place of death, the State demonstrated a need for this evidence. This factor weighs in favor of admission of the photos.

(5) Other Factors

There are no other relevant factors argued by Henderson that affect the admissibility of the photographs.

*Needlessly Cumulative Evidence*

Henderson also complains in issues four through fifteen that the trial court abused its discretion in the admission of the photographs because they were cumulative of the photograph complained of in issue three. However, rule 403 does not require the exclusion of all cumulative evidence; rather it requires exclusion if the probative value of the evidence is substantially outweighed by the needless presentation of cumulative evidence. *See* TEX. R. EVID. 403. We do not find that the number of photographs admitted was needlessly cumulative.

We find that the trial court's ruling to admit the photographs was reasonable in view of all the relevant facts and was not outside the zone of reasonable disagreement. The trial court did not abuse its discretion in the admission of the photographs pursuant to rule 403. We overrule issues two through fifteen.

*Cumulative Errors*

In her sixteenth issue, Henderson argues that the cumulative effect of the erroneously admitted photographs should constitute reversible error. However, since we have found that the photographs were not erroneously admitted, there can be no cumulative error. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999); *see also Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). We overrule issue sixteen.

*Conclusion*

Having found no error, we affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed September 19, 2013
Do not publish
[CRPM]